## Case No. 13,251.

### SPRAGUE et al. v. LITHERBERRY.

[4 McLean, 442.] [1]

Circuit Court, D. Ohio. July Term, 1848.

GUARDIANS—POWER TO APPOINT—DOMICIL—RECORD—AMENDMENTS—PRESUMPTION IN FAVOR OF REGULARITY.

1. The court of common pleas have the power to appoint guardians, and also guardians ad litem.

[Cited in Leonard v. Putnam, 51 N. H. 251.]

2. A guardian may waive process, and enter his appearance for his wards.

3. Temporary absence from the county does not affect the jurisdiction of the court, in the appointment of a guardian.

4. The domicil of the infant is always presumed to be that of its mother.

[Cited in brief in Rockingham v. Springfield, 59 Vt. 522, 9 Atl. 242.]

5. The place where its parents lived and died, and its property remains, is presumed to be the proper place for the court to make the appointment.

6. The signature of the judge to the record, is not necessary under the statute.

7. A court has the power to make amendments nunc pro tunc.

8. The case still being continued on the docket, and the counsel presumed to be in court, no notice of an amendment was necessary. It supplied the defect, by the delinquency of the clerk.

9. After the lapse of twenty-three years, when a great change has taken place in the value of the property, courts require clear ground to set aside the proceedings from which titles emanated.

10. Parol proof, after so great a lapse of time, not admissible to show that the minors were residents of Clermont county, and not of Hamilton.

11. We can not have before us the evidence that was before the common pleas, when the guardian was appointed.

12. Every presumption is in favor of the proceedings of a court having a general jurisdiction.

[Cited in Re Wilson, 18 Fed. 37.]
[Cited in Allan v. Hoffman (Va.) 2 S. E. 606; Dequindre v. Williams, 31 Ind. 456.]

[This was an action of ejectment by Sprague and others against John Litherberry.]

Gholson, Miner & Fishback, for plaintiffs.
Fox, Gwynne & Chase, for defendant.

OPINION OF THE COURT. This action is brought to recover possession of certain

lots of ground in the city of Cincinnati. Deed from Steubens Harpers to Joseph Seaman, dated the 29th October, 1806, for the premises in dispute. Deed from Seaman and Steubens to Samuel Harpers, on the same day, signed by Seaman. Deed from Joseph Seaman to H. Hafer 20th August, 1813, for five acres, a part of the land. Deed from Joseph Carpenter, dated 13th August, 1813, to H. Hafer for five acres. Deed from William Cooper to Henry Hafer, 26th May, 1813, for twelve acres and sixty-two hundredths. It was proved that Henry Hafer died in 1825, in Cincinnati, and left three children, two daughters and a son. The eldest daughter died in 1832, leaving Caroline and Henry surviving. Hafer was in possession, two or three years, and claimed the property until his death. The property was improved and was situated in the Eastern Liberties, and one of the witnesses says that Hafer was in possession five years. Caroline married A. Sprague, one of the lessors of the plaintiff, and lives in Kentucky. The defendants claim under an administrator's sale of the premises. A certificate was given in evidence under the seal of the court of common pleas, of Hamilton county, showing that Griffin Yeatman was appointed guardian of Caroline and Henry. Letters of administration were granted to Francis Kerr, on the estate of Hafer. A record was offered in evidence, showing a petition by the administrator, stating the debts due by the estate of Hafer and that there was no personal property out of which the debts could be paid, and praying an order for the sale of real estate, etc. Griffin Yeatman, the guardian, acknowledged notice. This record was objected to, because it does not appear to be a final record, and was not signed by the judge. The court admitted the record saying, that from the nature of the proceedings they took place at different times. Nothing more than an application by the administrator and an order of sale, could take place at the first term. At a subsequent term the sale would be brought before the court, etc. The statute or usage requires that the signature of the judges, or of the presiding judge, should be signed to the minutes of the proceedings of each day; but it is not necessary that this shall appear in the record of each case. And an omission of the signature, it is supposed, would not make the proceeding void. The objection is not understood to relate to the authentication of the record. The sale of the property was made on the 27th of May, 1826, to one Wicks and others, and deeds were made, as appears from the return of the administrator, to the purchasers. Deed from James Smith et al., to ———. Mortgage of Henry Hafer to Francis Kerr. The record of the court of common pleas was given in evidence in regard to the sale, etc.

A number of witnesses were examined to prove that at a certain time the children of Hafer were taken, by some friends to Clermont county, in Ohio. Objections to be made on the argument. On the part of the lessors of the plaintiff, it was argued that to render the sale good the heirs must have been made defendants. That this is the law of Ohio, has been repeatedly decided. 2 Chase's Ohio St. p. 1311, § 19. Also the Act 24 and the act of the 12th of March, 1831, are referred to, as requiring notice to the heir. That in the case of Ewing's Lessee v. Higby, 7 Ohio, 198, it was held, coming up collaterally, that the heirs must be notified. That in 12 Ohio, 253, where the question was collateral, it was held that notice to the heirs was essential to the exercise of jurisdiction. If the heirs were not made parties, the proceedings would be void. That in 1 Hill, 139, it was ruled, that infant heirs can not be concluded by a surrogate sale of lands, without the appointment of guardian. In [Elliott v. Peirsol] 1 Pet. [26 U. S.] 340, it is said there must be jurisdiction to protect officers from liability as trespassers. 12 Ohio, 195; 3 Ohio, 240; 11 Ohio, 442. Where there is no power to act, no legal consequences can follow. If there was no jurisdiction the proceedings were void. And that there was no jurisdiction may be shown aliunde. The heirs were not made parties by the appointment of Yeatman general guardian. This appointment was made nine days before the petition was filed. The court had no power to appoint Yeatman guardian. 2 Chase's Ohio St. p. 1317. Power to appoint a guardian is limited to the county in which the court sits. In 2 Leigh, 719, evidence was admitted to show that the party was entitled to letters of administration. If such jurisdiction be exceeded by the court, the act is void. 9 Mass. 543. If letters of administration be granted in a county other than where the deceased resided at his decease, the grant is void. 5 Pick. 20 same. Also 18 Pick. 496; 8 Wend. 139; 2 Williams, Ex'rs, 1084. Where an appointment of a guardian is made for a minor without the county it is void. 12 Ohio, 195 On the 20th December, 1825, the court appointed Griffin Yeatman guardian of the minor children of Henry Hafer deceased. At this time the heirs were not in the county. Nine days afterward the administrator filed his application to sell the land. As guardian he acknowledged notice, and waived process. Four years afterward, in 1829, the court, without motion, or notice, entered the following: "And now here, to wit, on 1st of September, 1829, the court being satisfied that Griffin Yeatman was appointed in November term, 1825, guardian ad litem, and accepted service after the appointment; that Yeatman swears that in November, 1825, he was so appointed at the request of Kerr, the administrator, on the application of Charles Fox, Esquire; and the court order the entry nunc pro tunc." And it is contended that the record could not be so amended. 3 Ohio

Cond. R. 696; 5 Ohio Cond. R. 284; [Elliott v. Peirsol] 1 Pet. [26 U. S.] 340; 3 Rand. 104. An order or judgment nunc pro tunc does not presuppose any such judgment had been entered. This is never done except on the death of a party, or to avoid prejudice by delay. 1 Starkie, Ev. 932; 1 Strange, 426; 1 Taunt. 385; 1 Burrows, 146, 219. The court had no power in 1829 to amend the record of 1825. The power to amend may be inquired into. 6 Dana, 226; [Elliott v. Peirsol] 1 Pet. [26 U. S.] 340; 20 Wend. 145; 23 Wend. 616; 3 Ohio, 337, 549, 560; 2 Ohio, 27; 2 Chase's Ohio St. p. 1275, § 96. Any defect in process or in the pleading may be amended; nothing else. This was not a clerical error. [Brush v. Robbins, Case No. 2,059.] It is not proposed to amend the judgment, but to amend the record by inserting the judgment, which the clerk had neglected to do. 9 Ohio, 132; 3 Ohio, 523. Power of amendment at common law. 1 Bac. Abr. 145; 1 Salk. 47; 3 Salk. 31; 2 Wils. 147; 27 E. C. L. 264; [Elliott v. Peirsol] 1 Pet. [26 U. S.] 342; [Brudlove v. Nicolet] 7 Pet. [32 U. S.] 422, 432; [Livingston v. Mooee] Id. 522. No power after the term to amend a judgment, except a mere matter of form. 2 Ohio, 248; 3 Ohio, 486, 523, 524, 577. Two contradictory records are before the court. If the judge had inspected the final record he would have corrected the errors.

If the court had the power to make the entry, it could not do so legally without notice. [Walden v. Craig] 14 Pet. [39 U. S.] 154. But if the power may be exercised, it can not operate retrospectively. 2 Chase's Ohio St. p. 1274, § 87; 27 E. C. L. 264.

It is urged that the record affords no evidence that Yeatman was appointed a general guardian. That it has not the signature of the judge, as required by the statute. 2 Chase's Ohio St. p. 1275, §§ 93, 94. The object of requiring the judge's signature was, to see that the record was correct.

If the heirs are necessary parties, they must be so made, to give jurisdiction. The sale was made under an old order. The power to sell must be in the hands of the sheriff.

The above points were discussed at large and ably by the complainants' counsel, and some authorities not named above, were cited. The synopsis is a very imperfect one, but it states the ground on which the arguments for the plaintiffs were mainly founded; and it will enable the jury better to understand the views of the court. The controverted points the case, gentlemen of the jury, are questions of law, which are, properly, referred to the court. These questions, however, refer to facts which are before the jury, and on which the questions of law arise. Hafer died in 1825. He left, as his heirs, two daughters and a son. In 1832, his eldest daughter died. Some short time after his death, the grand parents took the children to Clermont, the place of their residence. At November term,

1825, December the 20th, the court appointed Griffin Yeatman guardian of the persons and estates of Mary Hafer, aged nine years, Caroline Hafer, aged seven years, and Henry Hafer, aged five years; and the guardian gave bond in one hundred dollars in each case. On the 29th December, of the same year, Francis Kerr, administrator, filed his petition, naming the minor heirs as defendants, and stating the debts due by the estate and its assets, real and personal; from which it appears that the estate owed upwards of sixteen thousand dollars, and the petition prayed that the real estate might be sold. And on the same day the following entry was made: "As guardian of the children, mentioned in the above petition, I hereby acknowledge notice of the above petition, and waive the necessity of process being issued." Signed, "Griffin Yeatman." And also the following entry was made on the same day: "And now, here, to wit, on the 29th of December, 1825, in the term of November and year aforesaid, the petition of the administrator of Henry Hafer, deceased, for the sale of certain real estate therein described, notice acknowledged by Griffin Yeatman, guardian to the minors mentioned in the said petition, whereupon the court appointed Casper Hopple et al., appraisers, etc. An order of sale was issued, the appraisement having been made, dated 7th February, 1826. The administrator, after giving due notice, sold the real estate for about one thousand dollars less than the appraisement." The cause was continued regularly, until August term, 1829, when Griffin Yeatman made an affidavit, that at November term he was appointed guardian ad litem, for the minor heirs of Hafer, to appear in their behalf, in an application by the administrator for the sale of the real estate of Henry Hafer, deceased, which appointment he supposed had been entered, and he requested that it might then be entered, etc. And the court at the same term say, being satisfied that Griffin Yeatman was appointed guardian ad litem for the defendants, to defend this suit, at the term of November, 1825, and prior to the order of appraisement in the cause, who then accepted of his appointment, and appeared in the case, and that the defendants, by their said guardian, appeared in the cause prior to the said order of appraisement; and it being suggested that there is a doubt whether the said facts sufficiently appear of record, it is ordered to be entered, as of the term of November, 1825, that said Griffin Yeatman was appointed by the court, guardian ad litem for said defendants, and that the said guardian voluntarily appeared, etc., and the sale was ratified.

It is contended that there could have been but one appointment of guardian. The guardian first appointed, was of the persons and estates of the minors. He was appointed the 20th of December, 1825, and gave bonds on the 29th of the same month. There can be no mistake as to this appointment. It is not only matter of record, but the facts are so clearly

stated as to leave no room for doubt. This appointment was made before the petition, by the administrator, for the sale of the real estate, was filed. It appears that subsequent to this appointment of guardian the same person was appointed guardian ad litem. This was, no doubt, supposed to be necessary in the prosecution of the petition. The defense set up under the mortgage can not be sustained. If the proceedings are void, there is no connection by any of the defendants with the mortgage. And if the proceedings be valid, the mortgage has been discharged, and in no sense can it constitute an outstanding title to affect the recovery of the lessors of the plaintiff.

It is said there are discrepancies between the records. The final record is admitted to be evidence, though not signed by the judge. In the case of Osburn v. State, 7 Ohio (pt. 1) p. 212, it is said, "The signature of the presiding judge adds no validity to a record; and the record itself would be evidence, or an exemplification might be sent abroad and used without such signature." The final record differs from the short entries made in the blotter. And this difference always exists. In the minutes the petition or pleading is never stated at length. Short entries are made, from which, and the papers referred to, the record at length is made up.

Has a court the power to inquire into the jurisdiction of the court whose record is offered in evidence? This power is necessarily exercised by all courts. But in making such an inquiry, the court must be careful to discriminate between what constitutes jurisdiction and error. Where a court, from its general powers, has jurisdiction of the subject matter, a due notice served on the party, if the proceeding be in personam, or an attachment laid on the land, if the proceeding be in rem, gives jurisdiction; and after this attached, no proceeding in the subsequent stages of the case, however erroneous, will make them void. Bank of U. S. v. Voorhees [Case No. 939]; [Voorhees v. Bank of U. S.] 10 Pet. [35 U. S. 449]. In this respect there is a difference between courts of a general and a limited or special jurisdiction. In the latter, the facts must appear on the face of the proceedings which give jurisdiction, but in the former, jurisdiction is presumed, unless the contrary appear. In the one case, jurisdiction may be presumed, in the other, no such presumption lies. In Grignon's Lessee v. Astor, 2 How. [43 U. S.] 339, which involved collaterally the validity of an administrator's sale, the court say: "No other requisites to the jurisdiction of the county court are prescribed than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the county court where he dwelt or his real estate was situate, making these facts appear to the court." And that proceeding was under a law which required "the said courts, previous to their passing on the said representation, shall order due

notice to be given to all parties concerned, or their guardians," etc.

To give jurisdiction in the case before us, must the heirs be made parties? This is a question, as has been contended by the counsel for the plaintiffs, under the Ohio statutes, and we follow the construction of the statutes by the supreme court of the state. In 16th Ohio, a proceeding to sell the lands of the deceased, was declared void, "where no notice was given to the heirs, and the land was not described." Adams v. Jeffries, 12 Ohio, 274; the court say: "The heir has a right to be a party to the proceedings which deprive him of his estate, and we are constrained to deny the jurisdiction of a court which attempts to proceed without him."

There are some general expressions—Robb v. Irwin's Lessee, 15 Ohio, 700—which would seem to conflict with the above. The court say: "With these things the court of probate, on an application to sell land, have nothing to do, any further than to ascertain whether there are debts; whether the personal assets are sufficient, and whether it is necessary to sell the land," etc. But the question in that case was, whether a guardian ad litem could waive process and appear? By the 19th section of the act which regulates these proceedings (2 Chase, Ohio St. p. 134), it is provided, "that the application shall be by petition, to which the lawful heir, or the person having the next estate of inheritance of the testator or intestate, shall be made defendant."

In Ewing v. Hollister's Adm'rs, 7 Ohio, 138, the court say: "Before the passage of this act, it was held, that a citation, served on the general guardian of an infant defendant, was a proper mode of giving such defendant notice of the pendency of the petition." It is admitted that the general guardian may waive process, and appear for the minors. This was done, in this case, by Griffin Yeatman, the guardian. Was Yeatman duly appointed guardian? Before this answer is given, it may be proper to inquire, whether we can go beyond the entry upon the record? The statute provides, "that the court of common pleas shall have power, whenever they consider it necessary, to appoint a guardian or guardians to all minors within their county," etc. In the case of Maxsom's Lessee v. Sawyer, 12 Ohio, 195, the court held, that the appointment of guardian is open to inquiry collaterally. And they say: "If the plaintiff's lessor was not so within the county, he being the minor, the court had no jurisdiction; and the fact may be shown in this collateral way." In Perry's Lessee v. Brainard, 11 Ohio, 442, the court held, "that the guardianship of a minor female expires, by operation of law, when the ward arrives at the age of twelve years." In both these cases, the minor was the plaintiff in the suit.

The only objection to the first appointment of Yeatman is that the minor heirs were not within Hamilton county at the time the appointment was made. That this would be ex-

aminable by the supreme court, on a certiorari or otherwise, may be admitted. But can it be examined into collaterally? In Ludlow's Heirs v. McBride, 3 Ohio, 257, the court say: "So far as the courts of common pleas were invested with jurisdiction over the subject matter upon which they have acted, their decisions and orders are final and conclusive; if not reversed for error, they cannot be impeached collaterally. The grounds and proofs on which they proceeded are not examinable in this case." This is an important question of law, which must rest upon general principles, and does not depend on the construction of a statute. In making the appointment of guardian, the court having general jurisdiction, is presumed to have examined the facts on which their jurisdiction depended. The court held, in Lincoln v. Tower [Case No. 8,355], "that the appearance of the defendant is a material fact, and so is the service of process. It is admitted that the allegations in a record which were not material nor traversable, are not conclusive on the parties. But the record is conclusive of all matters in relation to the judgment, which were material, and which might have been traversed." 2 Serg. & R. 123; Leech v. Armitage, 2 Dall. [2 U. S.] 125; Green v. Ovington, 16 Johns. 58. In Thompson v. Talmie, 2 Pet. [27 U. S.] 165, the court say: "The age of the heirs was, at all events, a matter of fact upon which the court was to judge; and the law no where requires the court to enter on record the evidence upon which they decided that fact. And how can we now say, but that the court had satisfactory evidence before it, that one of the heirs was of age?" If it was so stated in terms on the face of the proceeding, and even if the jurisdiction of the court depended upon that fact, it is by no means clear that it would be permitted to contradict it, on a direct proceeding to reverse any order or decree made by the court. But, to permit that fact to be drawn in question collaterally, is certainly not warranted by any principle of law.

The principle was decided in the case last cited, which must govern the question now under consideration. The matter of fact, as to the residence of the minors, when Yeatman was appointed guardian was, of necessity, before the court of common pleas, when they made the appointment; and it was not necessary to place that fact upon record. That court determined it, and can the fact be open to proof collaterally, when the record is offered in evidence? If such be the law, then every fact necessary to be established in a judicial proceeding, whether it relate to the jurisdiction of the court, or to the merits of the case, and which did not constitute a part of the record, is open for examination. And how numberless are these facts, in the action of courts? In this view, less effect would be given to the judgment of the court, than to the verdict of a jury. In the transaction of its business, a court in almost every step taken in a cause

must act upon rules, adopted by statute or by judicial discretion. And all these rules impose limitations, within which, certain things must be done. And when the court, having the subject before it, decides a matter under these rules, can such matter ever be inquired into collaterally? I am aware that, in New York, it was held, where no fraud or unfairness was alleged in regard to the service of process, evidence might be heard to contradict the return of the officers; in a case on a record from a sister state, that decision, I think, must stand alone. Nine days before the petition was presented by Kerr, Yeatman was appointed. A waiver of process and an entry of his appearance were made in the presence of the court, and were entered upon its record. Should the fact under consideration be held to be open, collaterally, it is impossible to say to what uncertainties and mischiefs the principle might lead. How is the evidence on which the court acted to be preserved? Life is uncertain, and a fact susceptible of clear proof now, may be involved in great uncertainty twenty years hence. No one may be able to prove it. And shall titles, under judicial sales, rest upon so uncertain a basis?

Admit all that is contended for, in regard to the residence of the infants, when the guardian was appointed. No one will contend that the minors must, in fact, be within the county when the appointment was made. They may have been absent on a visit; their own mother was not living, and they were left in the charge of their step-mother. Her home would be their domicil, and by the law, she was entitled to occupy the mansion house one year from the death of her husband. What is to fix the domicil of infants? The home of these infants was in Hamilton county. Their property was there, and it was there only that a guardian could properly be appointed. If they had not, at the time, an actual residence in Hamilton county, they had constructively. It was the place of their birth, where their father and mother lived and died, and where all their property was to be found. They had left the county, at most, only a few months before this appointment was made. There is no suggestion of fraud or unfairness in the appointment. If it were proper now, after the lapse of twenty-three years, to inquire into these facts, how are we to ascertain that the court of common pleas had not evidence before it, that the absence of the minors from the county was only temporary, and did not affect their domicil? If this question were open, we should incline to say that the residence of the infants with their grand-parents, for a few months, in Clermont county, is not evidence of a change of domicil, under the circumstances, so as to affect the jurisdiction of the court. But we think, that this matter, without an allegation of fraud or unfairness, is not open for inquiry, especially after the lapse of twenty-three years.

The amendment at the instance of Kerr,

the administrator, on the affidavit of Yeatman, Sept. 1, 1829, who stated that at the November term he was appointed guardian, ad litem, as a prerequisite by the court, to the attainment of an order to sell the land, was the exercise of a discretion which no court, in a collateral manner, can disregard or treat as a nullity. It was not, in fact, the amendment of a judgment or an order. It was supplying the omission of the clerk in failing to enter, as his duty required, the appointment. The court was satisfied from the evidence, that the appointment had been made by them, and that the clerk had failed to perform his clerical duty in entering it. The case had proceeded upon the presumption that the entry of the appointment had been made as ordered. The capacity of Yeatman as guardian ad litem, had been recognized, in several important steps taken in the case. By the entry nunc pro tunc, no one was taken by surprise, no one gained an advantage; in the opinion of the court, such an entry was necessary to legalize the proceedings. The debts of the estate were large and no doubt pressing, and it was the interest of the heirs to have them paid; under such circumstances the order was entered. It had every equitable consideration to recommend it, and there was no objection to it, as it seems, of any force. The objection comes after the lapse of near a quarter of a century, when the land, in the hands of the purchasers, their heirs or grantees, by the improvements thereon, and by the growth of the city, has become of immense value, and it is made before a different tribunal from that which authorized the entry: under such circumstances the objection can not be sustained. When the order was made, the parties were still before the court, the cause having been regularly continued to that time, and under the circumstances we are not prepared to say that a court could set aside the proceeding, which exercised a supervisory power over the action of the common pleas— but the only question before us is, whether the order was void. We think it can not be so treated. The questions of law having been considered by the court, gentlemen, but little has been left for your consideration. Your verdict will be made under the opinion of the court expressed.

Certain instructions were asked, which were refused; and the court charged the jury that the county of Hamilton, where the children were born and where their father died, leaving a widow, the step-mother of his minor heirs, and who was entitled to dower in the lands, and who remained, as appears from the evidence, some time in the county, constituted in law the domicil of the minors, their property being there; and that notwithstanding their absence as proved, the court of common pleas, of Hamilton county, had power to appoint a guardian for them. That the facts on which the court acted were not required to be placed on record, and that every presumption was in favor of the action of the court, especially after the lapse of twenty-three years. That the proceedings of the court on the petition of the administrator for the sale of the lands, and the deeds made under the sales, divested the title of the heirs, and vested it in the purchasers.

THE COURT then informed the jury, that by the ruling of the above points of law favorable to the defendants, their verdict would be, not guilty.

Verdict not guilty.