## In re WILSON.

*(District Court, E. D. Michigan.   October 8, 1883.)*

1. PASSING COUNTERFEITED OBLIGATION OF UNITED STATES — REV. ST. §§ 5430 AND 5431 — INFORMATION.

   *It seems* that a person accused of passing a counterfeited obligation of the United States may be prosecuted by information.

2. SENTENCE OF CONFINEMENT — PENITENTIARY IN ANOTHER STATE.

   In sentencing a prisoner to confinement in a penitentiary outside the limits of the state in which he was tried, it is not necessary that the record of his conviction should show that there was no penitentiary within that state suitable for the confinement of prisoners from the federal courts, or that the attorney general had designated the penitentiary in question for such purpose.

3. HABEAS CORPUS — CERTIFIED COPY OF SENTENCE.

   A certified copy of the sentence of a court of record is sufficient authority for the detention of a convict.   No warrant or *mittimus* is necessary.

This was an application for a writ of *habeas corpus* to release a prisoner confined in the Detroit House of Correction, under sentence from the district court for the eastern district of Arkansas.   A copy of the record of his conviction was annexed to his petition, from which it appeared that he was found guilty upon an information which contained a count under Rev. St. § 5430, for having in possession, with fraudulent intent, an obligation engraved and printed after the similitude of an interest-bearing coupon bond of the United States.   The information also contained a second count, under section 5431, for passing and attempting to pass a counterfeited obligation and security of the United States. .   A copy of the obligation in question was attached to the information.   It purported upon its face to be a gold-bearing bond, in the sum of a thousand dollars, of the United States Silver Mining Company of Denver City, Colorado, signed by the president and secretary of the company, and having a strong resemblance to a genuine interest-bearing coupon bond of the United States.   The words "United States" were printed in large and conspicuous capitals, while the words "Silver Mining Co. of Denver City, Col.," appeared in small, indistinct type, at a considerable distance below the others. The bond was numbered and lettered very much like a genuine government bond.   It was agreed by counsel that the merits of the case should be disposed of upon the application for a writ without the formality of its issue and return.   Petitioner demanded his discharge upon the following grounds:

(1) Because he was convicted upon an information, and not upon an indictment; (2) because sentence was imposed upon him for a crime of which he was not convicted; (3) because it did not appear from the record that the court had power to sentence him to a prison outside the state of Arkansas, and made no finding that there was no jail or penitentiary within the state suitable for the confinement of persons convicted of crime against the United

States, or that the attorney general had made the proper designation for that purpose; (4) because he was not confined under any proper warrant or *mittimus.*

*Alfred Russell,* for petitioner.

*S. M. Cutcheon,* Dist. Atty., for the United States.

BROWN, J. 1. The prisoner was convicted upon an information charging him with the fraudulent possession of an obligation in the resemblance and similitude of a government bond, and with passing a counterfeited obligation of the United States. It is claimed that these are "infamous" crimes, within the meaning of the constitution, and that the court had no jurisdiction to proceed except upon indictment of the grand jury. There is no definition of the word "infamous" to be found in the statutes, although, by the law of this and several other states, the word "felony" includes every offense punishable by death or imprisonment in the state prison. It seems hardly necessary to say that this definition does not obtain in federal jurisprudence, inasmuch as many of the most trifling misdemeanors are punishable by imprisonment in the state prison. Revised Statutes, § 721, adopting the laws of the several states, applies only to civil cases. It has been repeatedly held that the fact that an offense may or must be punishable by imprisonment in a penitentiary, does not make it in law infamous. *U. S.* v. *Reid,* 12 How. 361; *U. S.* v. *Maxwell,* 3 Dill. 275; *U. S.* v. *Coppersmith,* 4 FED. REP. 198; *U. S.* v. *Wynn,* 9 FED. REP. 886; *U. S.* v. *Block,* 4 Sawy. 211.

The question whether the utterance of forged paper is a felony, was exhaustively discussed by Judge HAMMOND in *U. S.* v. *Coppersmith, supra,* and the conclusion reached that it was a mere cheat or misdemeanor. See, also, *Fox* v. *State,* 5 How. 410. It would naturally follow that it was triable by information, and such was the opinion of Judges BLATCHFORD and BENEDICT in *U. S.* v. *Yates,* 6 FED. REP. 861, and by Judge WHEELER in *U. S.* v. *Field,* 16 FED. REP. 778. In *U. S.* v. *Wynn,* 9 FED. REP. 886, Judge TREAT took a still more advanced position, and held that no crime is infamous, within the meaning of the constitution, unless expressly made infamous or declared a felony by an act of congress. An information for stealing from the mail was here sustained. But see *U. S.* v. *Block,* 4 Sawy. 211. The only case I have found to the contrary is that of *U. S.* v. *Cultus Joe,* 15 Int. Rev. Rec. 57, wherein it was held that proceedings by a criminal information in federal courts were unknown and unauthorized. In so far as this case is applied to offenses not infamous, it must be considered as overruled by a great preponderance of authority. I do not think the case is affected by implication by Rev. St. § 1022, since by sections 1044 and 1046 a proceeding by information in other classes of cases is expressly recognized by congress. In this concurrence of opinion I do not deem it necessary to give the subject an independent consideration. Even if I entertained some doubt regarding the correctness of the views expressed in these opinions, as

it is understood the question is now pending before the supreme court, upon a case certified from the eastern district of Missouri, (*U. S.* v. *Petit*, 11 FED. REP. 58,) I should deem it my clear duty, in a case arising upon *habeas corpus*, to sustain the action of a co-ordinate court until the question is settled by higher authority.

2. The prisoner also claims his discharge upon the ground that sentence was imposed for a crime of which he was not convicted. It was argued that he was convicted of having in his possession a bond in the resemblance and similitude of a government bond, but was sentenced for passing a counterfeited United States interest-bearing obligation. Counsel are in error in this particular. The information contained two counts. The first charged the prisoner with having in his possession, with fraudulent intent, an obligation engraved and printed after the similitude of an interest-bearing coupon bond of the United States. The second charged him with passing and attempting to pass a counterfeited obligation and security of the United States. The prisoner demurred, and his demurrer was overruled. He was then tried, and a general verdict of guilty returned. Motion for a new trial was then made, upon the ground that defendant was found guilty under the second count, when there was no evidence to support the same. This motion was overruled. From the charge of the court returned with the record, it also appears that the case was submitted to the jury under the second count. Finally, the record of his sentence shows that he was convicted under the second count. Whether the prisoner was properly convicted under this count, I find it unnecessary to determine, as it is not raised upon this motion. It would seem, however, from the cases of *Ex parte Parks*, 93 U. S. 18, and *Ex parte Carll*, 106 U. S. 521, [S. C. ɩ Sup. Ct. Rep. 535,] that this being a question within the jurisdiction of the district court of Arkansas to decide, its conclusion would not be reviewable upon a *habeas corpus*.

3. That it does not appear that the court had authority to commit the prisoner to a penitentiary without the state. By Rev. St. § 5541, "in every case where any person convicted of an offense against the United States is sentenced to imprisonment for a period longer than one year, the court * * * may order the same to be executed in any state jail or penitentiary within the district or state where such court is held." And by section 5546, "in case there is no penitentiary or jail suitable for the confinement of convicts, or available therefor, the court may sentence to some suitable jail or penitentiary in a convenient state or territory, to be designated by the attorney general." It is insisted that the sentence in this case is void under section 5541, for the reason that it does not appear upon this record that the requisite conditions existed which authorized an imprisonment in another state under section 5546. The *Case of Karstendick*, 93 U. S. 396, throws no light upon this point. This was also a pe-

tition for a *habeas corpus* to release a prisoner confined in a penitentiary of West Virginia, under sentence of the circuit court for the district of Louisiana. The sentence recited the fact that it had been in due form determined and ascertained that there was no penitentiary within the district of Louisiana, suitable for the confinement of persons convicted of crime in the circuit court of the United States, and that the attorney general had designated the penitentiary at Moundsville, in West Virginia, as the place of confinement of all persons sentenced by the circuit court of the United States in the district of Louisiana. The court held that such finding was conclusive, and could not be reviewed upon petition for a *habeas corpus*. It was further held to be no objection to the validity of the order that the state had not given its consent to the use of this penitentiary as a place of confinement of a convicted offender against the laws of the United States. Nothing else was decided in the case. There is nothing in the opinion of the court showing or tending to show that the recital in the sentence was necessary to its validity. Upon the contrary, it was said (page 403) that "no action of the courts was required. A notification to the courts was, therefore, only necessary for the purpose of influencing their conduct in the future. A sentence in this case for imprisonment in a state penitentiary would not have been void, but it might not have prevented the attorney general, acting under the statute, from directing a removal of the convict to some penitentiary outside of the state."

The question is whether, conceding the power to commit a prisoner to a penitentiary in another state, the judgment of the court should recite the fact that the conditions precedent to the exercise of such power existed. That the court was bound to find that the attorney general had designated the Detroit House of Correction as the proper place for the confinement of prisoners from the district court of Arkansas may be assumed; but it does not follow that the court is bound in every case to set forth this fact in its sentence. Suppose, for example, the superintendent of the House of Correction were sued for false imprisonment in this case, would it be necessary for him to show, beyond the conviction of a court of competent jurisdiction, that the attorney general had designated his penitentiary as a place for the confinement of prisoners? I think not. This court is bound to presume that the committing court acted within the law. To entitle a party to relief upon *habeas corpus* there must appear a want of jurisdiction in the committing court over the person, or the cause, or some other matter, rendering its proceedings void. *Ex parte Siebold,* 100 U. S. 371, 375.

Whenever it appears that the court has obtained jurisdiction of the person and the cause, the maxim, *omnia præsumuntur rite esse acta,* applies with full force. *Martin* v. *Mott,* 12 Wheat. 19; 2 Phil. Ev. 159 *et seq.; Com.* v. *Bolkom,* 3 Pick. 281; *State of Ohio* v. *Hinchman,*

27 Pa. St. 479; *Doe* v. *Litherberry*, 4 McLean, 442; *Lathrop* v. *Stuart*, 5 McLean, 167; *Grignon's Lessee* v. *Astor*, 2 How. 339; *Thompson* v. *Tolmie*, 2 Pet. 165.

4. It is finally claimed that the prisoner is illegally held, because not confined under any proper warrant or *mittimus.* This is clearly unnecessary. The person having custody of the prisoner is bound to show his authority, and the order or sentence of a court of record is sufficient. Hurd, Habeas Corpus, bk. 2, § 8; *People* v. *Nevins*, 1 Hill, 154; *State* v. *Heathman*, Wright, 691. This point was also ruled by the late Judge LONGYEAR in the unreported case of *In re Osterhaus.*

The application must be denied.

See *U. S.* v. *Field*, 16 FED. REP. 778, and note, 779; *U. S.* v. *Petit*, 11 FED. REP. 58, and note, 60.