(3 Misc. Rep. 192.)

## CHWATAL v. SCHREINER.

(Supreme Court, Special Term, New York County. April 20, 1893.)

WILLS—CONSTRUCTION—"ISSUE."

Testator devised his land in trust during the natural lives of his children, and until the youngest of the "issue" of his children living at the death of the longest liver of such children, or born in due time afterwards, should be 21 years old. He further provided that the trustees should distribute part of the income of the estate, in equal parts, among his children and the lawful "issue" of any who might be dead; such "issue" to receive the share which the parent would be entitled to, if living. After the expiration of the term of the trust, he devised the land to his "lawful grandchildren and the lawful issue of such grandchildren, * * * to take said estate in like manner, in every respect, as if it had been the estate of the respective parents of such grandchildren, * * * and had descended to them and their lawful issue by inheritance." *Held*, that the word "issue" was used, not in the sense of descendants generally, but of heirs at law.

Action by Franz Chwatal against George Schreiner to recover the earnest money paid upon a contract to convey land on Ninetieth street, in the city of New York, upon the ground that the vendor was unable to give good title. Judgment for defendant.

William Rhinelander died September 9, 1825. He left a will dated in March, 1825, which provided, among other things, as follows: "It is my will that the real estate situate in the city and county of New York, whereof I may die seised and possessed, shall be kept entire, and no part thereof sold, during the natural lives of my children, and the natural life of the longest liver of them, and until the youngest person among such of the issue of my said children, or any of them, who shall be living at the death of such longest liver, or shall be born in due time afterwards, shall come to the age of twenty-one years. With this intent, and to effect such purpose, I do devise the said real estate to my executors, their heirs or assigns, as joint tenants for the said term, in trust to receive the rents, issues, and profits thereof, and to apply the same in the following manner, viz.: First, out of the said rents, issues, and profits to discharge all debts accruing from time to time against the said estate, &c., &c.; secondly, to apply annually five thousand dollars out of the said rents, issues, and profits to the extinguishment of the principal of the debt owing by me at the time of my decease; and, lastly, the residue of the said rents, issues, and profits to distribute in equal parts among my children then living, and the lawful issue of such of my children as may be then dead leaving lawful issue, such issue to receive such share only as the parent of such issue, if then living, would be entitled to receive, and each of my children always to receive such share as such child would have been entitled to receive if all my children then dead, leaving lawful issue then living, had been living. And, after the expiration of the term for which my said lands are above devised to my executors in trust, I do then devise the real estate whereof I may die seised or possessed in the city and county of New York to my lawful grandchildren and the lawful issue of such grandchildren; such grandchildren and their lawful issue to take said estate in like manner, in every respect, as if it had been the estate of the respective parents of such grandchildren as tenants in common, and had descended to them and their lawful issue by inheritance." The testator left a very large amount of real estate, including a large farm in the upper part of this city, between Eighty-Sixth and Ninety-Fourth streets, and left surviving seven children and ten grandchildren. William C. Rhinelander proved the longest liver of his children, and died June 20, 1878. At that time all the grandchildren but one were living, and of full age; and one grandchild had died, leaving one child surviving, who was of age. At the time of the death of William C. Rhinelander 19 grandchildren of William Rhinelander were living, and only one of the grandchildren living at the death of William had died. A large number of great-grandchildren, and a number of great-great-grandchildren, were also living. Other great-great-grandchildren were born within due time after the death of William C. Rhinelander. The last was Emily A. Hurry, the child of Mrs. Emily A. Hurry, in the Renwick branch of the family, and she was born March 6, 1879. No child has been born to any of the grandchildren of William Rhinelander since the death of William C. Rhinelander. Shortly after the death of William C. Rhinelander an action of partition was begun by one of the grandchildren of William Rhinelander, and to this action all the living grandchildren and the child of the only deceased grandchild were made parties. All the parties to the suit were of full age. Part of the estate was sold under interlocutory decree, and final decree was granted February 10, 1882, partitioning the rest of the estate, and allotting the same in severalty among the parties. The premises now in suit were by this decree allotted to Mary R. Swan, a grandchild. A large part of the estate has been sold by the parties to whom the same was allotted on the partition, and most of the remainder has been improved by the erection of buildings thereon. Mrs. Swan sold the premises in question to the defendant. The defendant made a contract for the sale of the same property to the plaintiff. At the time named for the completion of

the purchase, the parties on both sides were ready, but the plaintiff declined to complete the contract on the ground that the partition suit had been prematurely brought, and that, therefore, the defendant could not give good title. Thereupon the plaintiff demanded back the purchase money paid on account, and brought this suit to recover the same. The question raised was, not who should take the property, but how long the trust should continue.

Samson Lachman and Theodore Baumeister, for plaintiff.

Henry H. Anderson, John M. Bowers, and George Welwood Murray, for defendant.

INGRAHAM, J.   I think it may fairly be said that the rule to be applied in determining the meaning of the testator when he used the word "issue" in his will has been settled in this state by the case of Drake v. Drake, 134 N. Y. 223, 32 N. E. Rep. 114, and the case of Soper v. Brown, (N. Y. App.) 32 N. E. Rep. 768.   The sole question, therefore, is to determine according to these rules the intention of the testator in using the word in his will.   The primary meaning to be given to the word is that of descendants generally. Thus, as was said in Palmer v. Horn, 84 N. Y. 519:

"In England, at an early day, it was held in its primary sense, when not restrained by the context, to be coextensive and synonymous with 'descendants,' comprehending objects of every degree."

And it follows that this meaning will be given to the word unless it appears from the will itself, or from the surrounding circumstances, that the testator used it in some other sense.   It appears, however, that (Soper v. Brown, supra) to give the word "issue" this meaning, would often defeat the express intention of the testator; and hence the courts held that, where it appeared that the testator intended the word to be used in another sense, such meaning was given to the word as would carry out the testator's intention.   And thus in Palmer v. Horn, supra, it was held from the context that the testator intended the word to be synonymous with "children," and limited its meaning in that case to children.   It appeared, however, that in many cases the word was used, not as meaning descendants generally, or limiting it strictly to children, but was used as synonymous with "heirs at law;" and this is expressed by Van Brunt, P. J., in delivering the opinion of the court in Drake v. Drake, 56 Hun, 595, 10 N. Y. Supp. 183, where he says:

"It is undoubtedly true that where there is a gift or devise by will after the determination of the life estate to A. B., and, in case of his death before the death of the life tenant, to his lawful issue living at such death, if A. B. died before the determination of the life estate, leaving issue, and such issue at the death of the life, should consist of children and grandchildren whose parents were living, in the absence of circumstances showing a different intent it would be held that the testator meant that the issue of A. B. should take by representation, and not as a class.  This has become the accepted rule of interpretation, because experience has shown that this construction, in many instances, best accords with the intention of the testator, and that it is only under very peculiar circumstances that the testator desires that a parent and child shall take at the same time as belonging to the same class, and that such circumstance, inducing to such intent, when it exists, can almost always be found evidenced by the will itself, or by the surroundings of the testator."

There is no evidence of any fact outside of the language used in the will itself that would enable the court to determine the intention of the testator, and it follows that the meaning that the testator intended to be given to this word must be ascertained from the language used in the will.   I am unable to see any evidence that would justify a finding that the testator intended to limit the meaning of the word to that of children. The will was dated on the 30th of March, 1825, and the testator died September 9, 1825.   By the fifth clause of the will he provides as follows:

"It is my will that the real estate situated in the city and county of New York, whereof I may die seised or possessed, shall be kept entire, and no part thereof sold during the natural lives of my children, and the natural life of the longest liver of them, and until the youngest person among such of the issue of my said children, or any of them, who shall be living at the death of said longest liver, or shall be born in due time afterwards, shall come to the age of twenty-one years.  With this intent, and to effect this purpose, I do devise the said estate unto my executors, their heirs or assigns, as joint tenants for the said term, in trust to receive the rents, issues, and profits thereof, and to apply the same in the following manner, viz."

It was the clearly-expressed intention of the testator, by this clause, that neither of his children should obtain the possession of any portion of this real estate; that the real estate should not be divided until after the death of the last child; and it clearly appears that he intended that his estate should necessarily be divided immediately upon the death of the surviving child, for he provides that the trust estate should continue until the youngest person among such of the issue of his said children who should be living at the death of the longest liver of his children should become of age. This clause, standing alone, would not indicate that he intended to give any meaning to the word "issue," except the primary, legal meaning, which would include all of the descendants of his children living at the death of the longest liver of his children.  Does the devise over indicate any intention as to the duration of the trust estate?   After directing certain specific payments to be made out of the income received by the trustees, the will provides that the residue of the rents, issues, and profits are to be distributed "in equal parts among my children then living, and the lawful issue of such of my children as may then die leaving lawful issue, such issue to receive such share only as the parent of such issue then living would be entitled to receive."  It is clear that the testator here intends that the issue of a deceased child should take by way of representation, and thus, in case of the death of one of his children during the continuance of the trust, the person who would inherit from such deceased child would be entitled to the income during the continuance of the trust.  Thus, if one child died, leaving, him surviving, a child and a grandchild whose parent was dead, the child would take one half of the income that had theretofore been paid to the parent, and the grandchild the other half.  The meaning thus given to the word "issue" in this paragraph would be that synonymous with that of "heirs at law," and not with "child" or "descendants" generally.  The clause then proceeds to dispose of the remainder of the real estate after the termination of the trust as follows:

v.23 N.Y.S. no.2—14

"And, after the expiration of the term for which my said lands are above devised to my executors in trust, I do then devise the real estate whereof I may die seised or possessed, in the city and county of New York, to my lawful grandchildren, and the lawful issue of such grandchildren; such grandchildren and their lawful issue to take said estate in like manner, in every respect, as if it had been the estate of the respective parents of such grandchildren as tenants in common, and had descended to them and their lawful issue by inheritance."

Here, again, the testator indicates the meaning with which he uses the words "lawful issue." It is not children of the grandchildren, but those who would be entitled to inherit from each grandchild upon his death, who are to take the share of the grandchild dying; so that, in the event before referred to,—the death of the grandchild of the testator leaving a child and the child of the child whose parent was dead,—the child would take one moiety of his parent's share, and the grandchild take the other moiety. Here we have, I think, an indication of the meaning which the testator desired to give to the word "issue" in the clause in question. He intended that the estate should not be divided until the death of the longest liver of his children. He also intended that the estate should not be divided during the minority of any one of the descendants of his children, who, upon the death of the longest liver of his children, would be entitled to a share of the estate. And so he provided that the estate should not be divided, and the trust estate should not terminate, until the death of the longest liver of his children, and the arrival at age of any one of the descendants of his children who would be entitled to a share in his estate. This being the clear meaning intended by the testator when he used the word "issue," in the portion which related to the disposition of the income during the continuance of the trust estate, and to the disposition of the remainder over upon the termination of the trust estate, I think a case is presented for the application of the rule applied in Palmer v. Horn, 84 N. Y. 519, and cases there cited, where the meaning to be given to the word "issue" was to be controlled by the meaning given to the word in the context; it appearing in that case that the testatrix had interpreted the word "issue" by the context as meaning "children." The cause related to the disposition of the testator's real estate in the city of New York. One subdivision of the clause fixed the duration of the trust estate, and the other subdivision of the clause provided for the disposition of the income of the trust estate during its continuance, and for a disposition of the property itself after the termination of the trust. Thus, in one subdivision of the clause there is no evidence as to the sense in which he used the word, but in the second subdivision of the clause it is clear that the word was used in a representative or substitutional sense, thus, applying the principle before stated, that "words used by the testator in his will are to be interpreted in the sense that he attributes to them, when it appears by the context that they are not used in the strict legal sense." Soper v. Brown, supra. No reason is apparent why the testator should give the word a different meaning in the first subdivision of the clause from that given to it in the last; and, taking the whole clause together, I think that the word "issue."

as used in the subdivision limiting the duration of the trust, should be given the same meaning that is given in the subdivision which applies to the disposition of the income during the continuance of the trust, and the final disposition of the property upon the termination of the trust; and thus the trust estate terminated upon the death of the longest liver of his children, and the arrival at the age of 21 of any descendant of his children who would be entitled to a share of the estate upon the death of the surviving child. I am aware that the plaintiff in this action is entitled to a marketable title, free from reasonable doubt; but as this is a pure question of law, arising upon the construction of a will, "and where the transaction is one between parties, the question is simply whether the legal title to the land, notwithstanding the objection, is good in the vendor, and will pass by his conveyance to the purchaser," and there is no dispute as to facts, and the soundness of the title depends upon the decision of the question discussed, which is purely one of law, the court should determine such question. See Holly v. Hirsch, (N. Y. App.) 32 N. E. Rep. 709. I think, therefore, that the defendant is entitled to judgment for a specific performance of the contract as prayed for.

Decision and judgment to be settled on notice.