MATILDA SLOANE, as Executrix, etc., of GEORGE SLOANE, Deceased, Respondent, *v.* WILLIAM R. H. MARTIN, Appellant.

: 77   249.
·145a 524|

*Service of a subpœna in the United States court on infants — when presumptively established by the judgment record.*

The creditors of a firm filed a bill in equity in the Circuit Court of the United States making the necessary persons parties, and including among them two children of a deceased partner, aged respectively two and three years. On the same day a subpœna was issued, but there was no entry in the docket of the clerk (which contained all other proper and necessary entries) of a return of the subpœna, nor did the papers in the case on file in the clerk's office contain the subpœna or any return of its service.

The record and entries in the docket showed that an appearance of a solicitor for such infants was filed and entered, and that on the day following, the infants, by their mother as natural guardian, filed a petition in which was recited, among other things, the filing of the bill against them, their appearance, that they were under the age of fourteen years, and that they were advised that a certain person would be a proper person to be appointed their guardian to defend the suit, and praying his assignment for such purpose. Such petition was verified by the mother and the solicitor of the infants.

On the same day, by an order duly filed and entered, such person was appointed the guardian of such infants, who thereafter put in the usual guardian's answer.

A trial of the issues was had, resulting in an adjudication adverse to the interests of the infants.

*Held*, that, assuming the service of the subpœna to be jurisdictional, the fact
of the service thereof was presumptively established by the judgment record.

Whether in an action in the United States Circuit Court the appearance of the
infant after the filing of the bill and the issuing of the subpœna is the equiva-
lent of personal service upon him of the subpœna and dispenses with the neces-
sity of such service, considered by William Allen Butler, referee.

What defects in a title will render the same unmarketable, considered.

APPEAL by the defendant, William R. H. Martin, from a final
judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the 23d day
of November, 1893, upon the report of a referee, and also from the
interlocutory judgment entered in said clerk's office on the 25th
day of July, 1893, upon the report of a referee.

The opinion of the referee before whom the action was tried was
as follows:

WILLIAM ALLEN BUTLER, Referee:

The plaintiff brings this action to compel the specific performance
by the defendant of a contract for the sale of certain lands and
premises situated at, and adjoining, the northeast corner of Broad-
way and Thirty-second street, in the city of New York, extending
on Broadway fifty-three feet nine inches, and on Thirty-second
street one hundred and twenty-two feet ten inches. The
contract, which bears date October 22, 1891, provided for the
sale and conveyance by the plaintiff of the premises, as
described therein, to the defendant, in consideration of the sum
of $650,000, to be paid in the manner specified by the con-
tract, upon receipt whereof the plaintiff was to execute and deliver
to the defendant an executrix's deed, conveying the fee simple of
the premises, free from all incumbrances except certain enumerated
existing leases. At the proper time the plaintiff tendered to the
defendant a conveyance of the premises, as described in the con-
tract, duly executed by herself, in her capacity of executrix under
the will of her husband, George Sloane, deceased, which contained
a power of sale authorizing such conveyance, and also duly executed
by all the heirs at law and devisees of her testator. No objection
was made by the defendant to the form of the conveyances, but as
to a part of the premises, being that portion thereof situated on the
northeasterly corner of Broadway and Thirty-second street, which
was conveyed by William V. Brady and wife and Henry A. Hurlbut

and wife to Ezra R. Goodridge by deed dated January 30, 1867, the defendant objected to the conveyances tendered by the plaintiff, and refused to accept them, on the ground that they did not convey a good and marketable title, alleging that the title to that portion of the premises was not in the plaintiff, and was never acquired by her testator, but that the owners thereof are the children of the said Ezra R. Goodridge, who died on or about August 20, 1867, and who at the time of his death was the sole owner thereof, in fee simple. As to the residue of the premises, the defendant made no objection to the title tendered by the plaintiff. The plaintiff claims, upon the pleadings and proofs in this action, that the deeds tendered by her to the defendant were in full performance of her contract of sale, and that, as to the portion of the premises to which the defendant's objection applies, the title in fee simple was acquired by J. Pierpont Morgan under a sale made by Simon de Visser, a receiver thereof appointed by the Circuit Court of the United States for the southern district of New York in a suit in which James Drake and others were plaintiffs, and Francis Goodridge, survivor of Ezra R. Goodridge, and others, were defendants, pursuant to the decree of the court made therein, June 19, 1868, and that by subsequent conveyance by Morgan, the purchaser at the receiver's sale, to the plaintiff's testator, the latter acquired a good title in fee to the same premises.

The defendant's contention upon the evidence at the trial is that in respect to the two infant children of Ezra R. Goodridge, who were made parties defendant to the above suit, a reasonable doubt exists as to the question whether service was made upon them, respectively, of the process of the court, and also as to the further question whether the Circuit Court of the United States, sitting in equity, could, at the time of the commencement of the suit, acquire jurisdiction over the infant defendants in any other manner than by the service upon them of the process of the court. The question, therefore, to be determined, under the issue joined in this action, is whether the title tendered by the plaintiff is good and marketable, or whether such a reasonable doubt in respect to its validity has been established by the evidence as to entitle the defendant to be relieved from his purchase.

Under the contract of sale, the defendant was entitled to a con-

veyance which should vest in him a good and marketable title to the entire premises described in the contract. It is well settled that a title, to be marketable, must be free from reasonable doubt. This established rule has frequently been applied where it appeared that the title depended upon a question of fact, essential to its validity, in respect to which the facts appearing at the time of the contract of sale might be changed upon a new inquiry, or were open to opposing inferences. It has also been applied where it appeared that a question of law, essential to the validity of the title, was involved, in respect to which there were grounds for judicial doubt, or which could be properly determined only in an action where all the parties interested were before the court, and not in an action or proceeding between a vendor and purchaser. (Atkinson on Marketable Titles, 419 ; *Lowes* v. *Lush*, 14 Ves. 548 ; *Shriver* v. *Shriver*, 86 N. Y. 575, 584, 585 ; *Fleming* v. *Burnham*, 100 id. 1, 10 ; *Vought* v. *Williams*, 120 id. 253 ; *Moore* v. *Williams*, 115 id. 586 ; *Jordan* v. *Poillon*, 77 id. 518 ; *Campbell* v. *Stokes*, 66 Hun, 381.) It is equally well settled that a purchaser is not entitled to demand a title absolutely free from all suspicion or possible defect. (*Spring* v. *Sandford*, 7 Paige, 550 ; *Hellreigel* v. *Manning*, 97 N. Y. 56 ; *Chase* v. *Chase*, 95 id. 373 ; *Kip* v. *Hirsh*, 103 id. 565 ; *Moser* v. *Cochrane*, 107 id. 35 ; *Ferry* v. *Sampson*, 112 id. 415 ; *Mut. L. Insurance Co.* v. *Woods*, 121 id. 302 ; *Cambrelleng* v. *Purton*, 125 id. 610 ; *Todd* v. *Union Dime Sav. Inst.*, 128 id. 636 ; *Chwatal* v. *Schreiner*, 23 N. Y. Supp. 206.) And the rule is the same at law as in equity (*Moore* v. *Williams*, 115 N. Y. 586), and as to judicial sales and private sales. In *Spring* v. *Sandford* (*supra*) Chancellor WALWORTH says, in respect to a judicial sale : " The court, in giving a title to the purchaser, does not undertake to give a title which can by no possible state of facts be defeated. It only assumes to give such a title as a purchaser at a private sale could not legally object to receive."

The case is cited with approval in *Moser* v. *Cochrane* (*supra*), where the court held that, upon a question as to the sufficiency of a title offered by a vendor to a purchaser under a contract of sale, evidence of the opinion of conveyancers that the title was unmarketable was inadmissible, saying : " If the facts proved justified the inquiry the question was one for the court to answer."

The principle established by the authorities must be applied in view of the circumstances of the particular case in reference to which it is invoked; and where the facts connected with the title, as to its acquisition or transmission, are found to be determined by positive evidence, or by such controlling presumptions that they cannot be changed upon any new inquiry, or where the law is ascertained to be so well settled as to preclude any reasonable doubt of its binding force as a judicial rule, the hesitation or apprehension of the purchaser cannot prevail against the reasonable certainty of the validity of the title. The solution of the question may involve close scrutiny and careful research, with some attending elements of diversity in adjudged cases and expressed judicial opinions, as in the case of *Belmont* v. *O'Brien* (12 N. Y. 394) where the question related to the alienability of lands held in trust, in respect to which differences of judicial opinion were recognized by the court, and its decision, requiring the purchaser to complete the purchase, was against the dissent of two of the judges. The question is whether, in legal contemplation, the doubt claimed to affect the validity of the title is or is not a reasonable doubt. There must be a real question and a real doubt. (*Fleming* v. *Burnham*, 100 N. Y. 1, 10.) And when, after testing the alleged doubt by rules of law so well established as to lead by their application to a conclusive demonstration, it is made to appear that the title is good and marketable, beyond any reasonable doubt, the purchaser will be held to perform his contract. Guided by the above rules, the present inquiry will be pursued as to both branches of the contention between the parties, the first of which relates to the supposed doubt cast upon the title by the question whether the infant children of Ezra R. Goodridge were personally served with process in the equity suit in which they were defendants, and in which the sale of the premises affected by the suit was decreed to be made, and was made. This inquiry necessarily assumes that such service of process was a jurisdictional fact essential to the validity of the decree of sale.

It appeared at the trial that Ezra R. Goodridge, before and at the time of his death, August 20, 1867, was a member of the firm of Ezra R. Goodridge & Co., doing business in the city of New York, composed of himself, his brother Francis Goodridge, and Franklin F. Randolph. Ezra R. Goodridge died intestate, a resident of

Westchester county, N. Y., leaving him surviving his widow, Mary C. Le Roy Goodridge, and two infant children, Mary Read Goodridge and Ezra Read Goodridge, his only heirs at law, who were, at the time of his death, of the ages of two and three years, respectively. Letters of administration on his estate were issued to his widow. He was the apparent owner, at his death, of several parcels of real estate in the city of New York, of which the premises in question formed a part. After his death the firm of Drake, Kleinwort & Cohen, of London, England, creditors of Ezra R. Goodridge & Co., commenced actions in the Supreme Court of the State of New York against Francis Goodridge, the sole survivor of the firm (Franklin F. Randolph having died September 18, 1867), to recover the amount of an indebtedness of the firm of Ezra R. Goodridge & Co. to them. In such actions, warrants of attachment against the property of Ezra R. Goodridge & Co. were issued to the sheriff of the city and county of New York, and levied upon real property, including the premises in question, and after the recovery of judgments in the actions to the amount, in the aggregate, of $303,273.17, and the returns of executions thereon by the sheriff wholly unsatisfied, except as to $6,222.99 collected by the sheriff, Drake, Kleinwort & Cohen, on January 13, 1868, filed their bill in equity in the Circuit Court of the United States for the southern district of New York against Francis Goodridge, as survivor of Ezra R. Goodridge & Co.; the infant children of Ezra R. Goodridge, deceased; his widow, individually and as administratrix; and the legal representatives of Franklin F. Randolph, deceased, his widow, and the children of a deceased brother; and other parties who claimed to have liens on the attached premises — setting forth the recovery of judgments and the return of executions unsatisfied as above, and alleging that the real property of which Ezra R. Goodridge died seized was in fact the property of the firm of which he was a member at the time of his death, and had been purchased with partnership funds. The bill prayed that the plaintiffs be adjudged to be creditors of the firm of Ezra R. Goodridge & Co., and as such to have a prior lien, by virtue of their attachments, judgments and executions in the State court, upon the premises in question and the other property described in the bill, and to be entitled to the application of the said property to

the payment of their judgments by means of a receiver to be appointed by the court. The allegation was also made in the bill of complaint that as the apparent title to the property was in Ezra R. Goodridge, individually, the sheriff was unable to sell the same, under the executions issued to him upon the judgments, free from cloud upon the title. Upon the filing of the bill, January 13, 1868, a subpœna was issued on the same day, as appears by the equity docket kept by the clerk of the United States Circuit Court for the southern district of New York, in which the suit is entered by its title, and in which is also entered the issuing of the subpœna. There is no entry in the docket of the return of the subpœna by the United States marshal, the proper officer by whom the subpœna should be served and the return made, nor any entry of service of the subpœna on any defendant, nor do the papers in the case on file in the clerk's office contain the subpœna, or any return of service thereof. A blank line appears in the docket, below the entry of the issuing of the subpœna, left blank in order that the return of the subpœna might be entered whenever the same should be returned. The record and the entries in the docket show that on February 10, 1868, there was filed and entered the appearance of the defendants Mary R. Goodridge and Ezra Read Goodridge, the infant children of Ezra R. Goodridge, by F. A. Lane, their solicitor. The record further shows that on February 11, 1868, the same infant defendants, by their mother, as natural guardian, filed a petition which recited the filing of the bill against them; that they had appeared thereto, and are preparing to answer the same; that they are infants under the age of fourteen years, to wit, of the ages of two and three years, respectively; and that they are advised that Richard E. Stillwell, of the city of New York, is a proper person to be appointed their guardian to defend the suit, and praying that he may be assigned their guardian, by whom they may answer and defend. The petition was verified by the affidavits of the mother and the solicitor of the infants, and upon these papers, and the consent of Richard E. Stillwell to serve as guardian, he was appointed, by an order of the court made and filed February 11, 1868, the guardian *ad litem* of the Goodridge infants. Similar proceedings were taken in respect to two infant defendants who were children of Franklin F. Randolph, deceased, and the same person was

appointed guardian *ad litem* for them. The guardian *ad litem* thus appointed put in the usual general answer for the infant defendants. Other parties defendant, including the mother of the infants, and the surviving partner of the firm of Ezra R. Goodridge & Co., and the legal representatives and widow of Franklin F. Randolph, deceased, answered the bill, and contested the suit on the merits; and the remaining parties having answered, or the bill having been taken as confessed against them, the cause was tried before Judge BLATCHFORD. On June 19, 1868, a decree was entered, adjudging the premises in question to be partnership property, properly applicable to the payment of the judgments recovered in the State court, appointing Simon de Visser receiver, and directing the execution of a deed by Mary C. Le Roy Goodridge, the widow of Ezra R. Goodridge, and the guardian *ad litem* of the infant Goodridge children, to such receiver, and the sale of the premises by him at public auction. The deed was executed as required by the decree, and the receiver sold the premises at public auction, December 1, 1868, to Messrs. Mayer & Simon Sternberger, who paid the usual deposit. Subsequently, in January, 1869, the purchasers at the receiver's sale refused, under advice of counsel, to complete their purchase, and thereupon the receiver applied to the court for an order to compel them to complete it. The purchasers resisted the application, and specified twelve distinct grounds of objection to the title, one of which was that the Goodridge infant defendants had not been served with process, and, therefore, the court had never acquired jurisdiction of their persons. A stipulation was entered into between the attorneys for the receiver and the attorneys for the purchasers to the effect that, for the purposes of the motion, certain facts, which are stated in eight paragraphs of the stipulation, and are separately numbered, were admitted, one of such facts being that none of the infant defendants were served with a subpœna or other process in the suit. After argument Judge BLATCHFORD decided the motion in favor of the receiver, and ordered the purchasers to complete their purchase. No order was entered on such decision. The purchasers notified the receiver that they would appeal from the decision to the Supreme Court of the United States. No appeal, however, was taken. The proceedings by the receiver to compel the purchasers to complete their purchase

were withdrawn. The purchasers were paid back the amount deposited by them, with certain allowances for counsel fees and expenses, and thereafter, on October 30, 1871, the decree was so amended that the receiver was authorized to sell the premises at private sale. The receiver executed the decree, as amended, by a sale of the premises in question, by deed dated May 23, 1872, to J. Pierpont Morgan, who afterwards conveyed them to Ezra R. Goodridge.

On the facts thus established, it is manifest that if it were incumbent upon the plaintiff to prove by direct and positive evidence that the subpœna in the Drake suit was served on the infant defendants, the children of Ezra R. Goodridge, deceased, and to establish such service as a jurisdictional fact, necessary to the validity of the decree of sale, this action must fail for want of such proof. But it is not essential to the plaintiff's action that she should give such proof. Having put in evidence the judgment record in the Drake suit, which is the judgment of a court of general jurisdiction, acting within the scope of its powers, she is entitled to rest on the presumption of the regularity of the proceedings, including whatever is necessary to the jurisdiction, the rule being that, whenever such a judgment is questioned collaterally its regularity must be presumed until the presumption is overcome by competent proof. (*Yates* v. *Lansing*, 9 Johns. 407 ; *Foot* v. *Stevens*, 17 Wend. 483 ; *Hart* v. *Seixas*, 21 id. 40.) In *Foot* v. *Stevens* it is said that the rule, as "abundantly settled," is laid down by CLINTON, Senator, as the result of all the cases, in *Yates* v. *Lansing*, that "an inferior court shall, when questioned, show that it acted within its jurisdiction, whereas in courts of general jurisdiction it is presumed until the contrary appear." In *Chemung Canal Bank* v. *Judson* (8 N. Y. 254) the court say, in respect to District and Circuit Courts of the United States, that they stand on the same footing as courts of general jurisdiction, and the authority of such courts is always to be presumed until the contrary is shown. It is unnecessary to multiply citations in support of this rule, as the rule itself and its proper limitations have been definitely established in this State, by the court of last resort, in *Ferguson* v. *Crawford* (70 N. Y. 253 ; 86 id. 609). It was there held that there is no distinction between the effect of foreign and domestic

judgments as to the presumption of jurisdiction. The jurisdiction may be inquired into, and disproved by evidence, even where the record contains recitals of jurisdictional facts. Such recitals are not conclusive, but, until disproved, every intendment is in favor of the jurisdiction. In the case last cited the judgment assailed had been rendered on the foreclosure of a mortgage by an action in which an appearance had been entered for the defendant by an attorney, but no answer had been interposed. All this appeared by the judgment roll. Thereupon the party attacking the judgment called the attorney as a witness, and offered to prove by him that the signature to the notice of appearance was a forgery, and that he was never authorized to appear, and never did appear, for the defendant in the foreclosure suit. The evidence was excluded, and on appeal the ruling of the trial court was affirmed by the General Term on the authority of *Brown* v. *Nichols* (42 N. Y. 26), where it had been held that a judgment recovered against a defendant not· served with process, but for whom an attorney had appeared without authority, could not be attacked on that ground in a collateral proceeding. The Court of Appeals, after an extended examination and discussion of the authorities, held that the rejected evidence was competent and admissible, and, for the error in its exclusion, reversed the judgment and ordered a new trial. It turned out on the new trial that the notice of appearance by the attorney was genuine and not a forgery, and that the appearance itself was authorized, and the trial court so held. Upon a second appeal to the Court of Appeals the court said, in reference to the former decision, that the judgment in the foreclosure suit " was regular on its face, and every intendment should be in favor of its validity ; and although we have held that the defendant therein was at liberty to show, if he could, that the court never acquired jurisdiction of his person, yet the burden of establishing that fact was upon him, and it should be established in the most satisfactory manner to deprive the judgment of its effect," and, after referring to the evidence admitted at the second trial to impeach the judgment, held it to be " insufficient to rebut the presumption in favor of the regularity of the judgment," and that " no error was committed by the trial court in sustaining its validity." (*Ferguson* v. *Crawford*, 86 N. Y. 609.)

The regularity and validity of the proceedings of the United

States Circuit Court in the Drake suit must, therefore, be taken as established by the record, unless the legal presumption in their favor is, overcome by competent proof. Such proof may either consist of recitals in the record itself, inconsistent with the presumption, or of extrinsic evidence contradicting the recitals of the record as to jurisdictional facts, or, if the record is silent, establishing affirmatively that jurisdiction was not acquired. Recitals in a record as to jurisdictional facts are, as already stated, only *prima facie* evidence, and not conclusive. (*Ferguson* v. *Crawford, supra.*) But they will be held conclusive until " clearly and explicitly disproved." (*Bosworth* v. *Vandewalker*, 53 N. Y. 597.) In the case last cited, as here, it was claimed that the judgment roll contained no proof of service on the infant defendants. There was a general recital of service on all the defendants, but not of service on those who were infants. The court held that it was a fair intendment that this recital included the infant defendants. Further objection was made that the judgment roll contained no proof of service of process on the infant defendants, and as to this it is said : " If it was necessary that the roll should contain proof of service upon all defendants, this would be a weighty objection," and then, after considering requisites of a judgment roll, under the law regulating the proceedings of the court, held that the statute did not require proof of service of process to appear in the judgment roll, except as to defendants who failed to appear or to answer in the action, and say : " There was here an answer made for the infant defendants — the general answer put in by their guardian *ad litem*, by her attorney. The proof of service of summons upon them not being a requisite to a perfect judgment roll, its absence is not a fatal objection." And the conclusion was reached that, as the proofs of the party assailing the judgment failed to show that there was not service of process on the infant defendants, they did not suffice to remove the presumption of jurisdiction. There was no statute or rule in force, at the time of the rendering of the judgment by the United States Circuit Court in the Drake suit, requiring the judgment roll to contain proof of service of process on infant defendants who had appeared and answered by guardian *ad litem*, and in the absence of any such requirement the rule as laid down in *Bosworth* v. *Vandewalker* seems applicable here. The record in the Drake suit shows that the

infant defendants, after the filing of the bill and the issue of the subpœna, defended the action by a guardian *ad litem* appointed by the court upon the petition of their mother, who was their natural guardian. If personal service of the subpœna on the infants was a prerequisite to jurisdiction in the court to entertain the application of their mother for the appointment of a guardian *ad litem*, it must be presumed, until the contrary is shown, that such service was made. A recital in the record that it was made would establish the fact of service, presumptively, until disproved. A recital in the same record, at any stage of the proceedings, showing the contrary, would rebut the presumption, and would be competent evidence to impeach the judgment. (*Bolton* v. *Jacks*, 6 Robt. [N. Y.] 166; *Ferguson* v. *Crawford, supra.*) But if the record is silent as to the fact of service, and contains no recital touching that fact, the fact of service is presumptively established. In *Hatcher* v. *Rocheleau* (18 N. Y. 86) the court held that, where a record of a court of general jurisdiction is relied on, "it is unnecessary to prove that the defendant was served with process, or appeared in court, though the defendant is at liberty to controvert those facts" (page 92), and, further, "the court mentioned in the record was *prima facie* one of general jurisdiction;   *   *   *   and the presumption is, as in the case of all judgments rendered by such courts, that the court acquired jurisdiction of the person. (2 Cow. & H. Notes, 905, 906; *Moulin* v. *Trenton, etc.*, 4 Zab. 222," page 95.)

It has repeatedly been held by courts of other States, and by courts of the United States, that where a court of general jurisdiction is shown by the record of its judgment to have appointed a guardian *ad litem* for infant defendants, and to have proceeded to judgment against them, it is not requisite that the record should show that the process of the court was served on the infants. Until the contrary is made to appear, the presumption is that whatever was necessary to give the court jurisdiction was done before it acted, in other words, that jurisdiction was acquired before it was exercised. In *Brackenridge* v. *Dawson* (7 Ind. 383) the court refused the application of a purchaser of land at a judicial sale to be relieved on the ground that certain infant defendants were not served with process in the proceedings for the sale, saying: "No proof was offered in this case as to whether the infants were or

were not served with process, or whether they were or were not in court when the guardian *ad litem* was appointed for them, except what is shown by the record in partition. That record shows that process was ordered against them, and that at the following term a guardian *ad litem* was appointed. As nothing further appears, the presumption is, the proceedings being attacked collaterally, that they were regularly brought into court."

In *Kelley* v. *Morrell* (29 Fed. Rep. 736) the judgment record was held sufficient to uphold the title under a decree of the Probate Court of Morrison county, Minn., although it did not show that the notice required by law to all parties interested had been given. The court say that "the exercise of jurisdiction in appointing a guardian warranted the presumption that everything necessary was done before the court acted;" citing *Grignon* v. *Astor* (2 How. [U. S.] 319). In *Boyd* v. *Roane* (5 S. W. Rep. 708) the Supreme Court of Arkansas say, in reference to a similar objection: "The record * * * discloses the process issued for the infant defendants, and that a guardian *ad litem* was appointed to defend for them. The presumption is indulged that the court would not have appointed the guardian *ad litem*, and proceeded to judgment, without the service of summons."

In *Sprague* v. *Litherberry* (4 McLean, 442, 445), where the question turned on the validity of an appointment of a guardian whom the court could only appoint if the infants were residents of the county, and the judgment did not show this jurisdictional fact, the court say: "In making the appointment of guardian, the court, having general jurisdiction, is presumed to have examined the facts on which their jurisdiction depended."

In *Lessee of Nelson* v. *Moon* (3 McLean, 319) a decree in a partition suit was attacked on the ground of invalidity, among other things, because two infant defendants had not been served with process. It appeared that a guardian *ad litem* had been appointed for them, who had answered and defended the suit in their behalf. The court say: "The two infant defendants appeared by guardians *ad litem*, and it is objected that this was done without a notice having been served on the infants. If it be admitted that for this defect in the proceeding the Supreme Court would have reversed the decree, yet it does not follow that the decree, when collaterally used, can be treated as a nullity. There was an appearance by a guardian

specially appointed by the court to defend the suit, and the presumption will be in favor of the proceeding, and not against it, when used as evidence."

These authorities, which seem to me directly in point here, are in harmony with the general doctrine of our own courts, as already stated, in respect to the presumption of validity in favor of judgments, when collaterally questioned. The present defendant assails the decree in the Drake suit collaterally. He is in the same plight as if he were seeking to impeach it for want of jurisdiction in the court which made it, by an action to rescind his contract of purchase, and recover back the purchase money paid, on the ground of reasonable doubt as to the fact of service, presumptively established by the record; and the burden of proof is on him to rebut the presumption by competent evidence, and to show that, in fact, there never was any service on the infant defendants. (*Methodist, etc., Home* v. *Thompson*, 108 N. Y. 618; *Moore* v. *Williams*, 115 id. 586, 595.)

In respect to the fact of service of the subpœna on the infant defendants, there is no recital whatever in the judgment record, nor in any of the papers in the cause on the files of the court, at any stage of the proceedings leading up to the final decree. The record is silent in this regard. The defendant claims that, although there is nothing in the record stating the non-service of the subpœna on the Goodridge infants, it cannot, within the lines of the adjudged cases, or the rules laid down by the text books, be called a silent record, for the reason that the blank left in the clerk's equity docket for entry of the return of the subpœna remains unfilled, and, assuming that jurisdiction over the infants could be acquired only by the service of the subpœna, the absence of an entry showing a return negatives the presumption of jurisdiction thus acquired; and it is further claimed that the record fails even to show any delivery of the subpœna to the United States marshal for service, and as the evidence of the clerk of the United States Circuit Court shows the custom to have been, when the subpœna was issued, to hand it to plaintiff's solicitor for delivery to the marshal, there is nothing to show that the marshal ever had the subpœna, and, even if the presumption is indulged that the marshal did have it, such presumption does not include its return by him, because the presumption of a

proper performance of all the acts essential to jurisdiction must include an entry by the clerk, in his docket, of the marshal's return, and no such entry exists. And, still further, the defendant claims that all the proceedings taken on behalf of the infant defendants for the appointment of a guardian *ad litem* are manifestly on the theory that the infants could voluntarily appear without service of process, as neither their petition, the affidavit annexed, nor the order of appointment, contain any mention of the fact of service of process on the infants.

Inasmuch as the intendment of the law in favor of a judgment, when questioned collaterally, is that the action of the court in exercising jurisdiction was based on the existence of the necessary jurisdictional facts, and the cognizance thereof by the court, it is inadmissible to disturb the presumption of validity by the mere absence from the record of entries or recitals. The basis of the presumption is that the court did not usurp jurisdiction, but exercised it, in due course, and that whatever was requisite to be done to set its power in motion had been done. If the court's own records show affirmatively that any such requisite was omitted, the presumption is rebutted, and the burden of proof is shifted to the party asserting the validity of the judgment. If, for example, the record in the Drake suit, instead of being a blank, so far as the service of the subpœna is concerned, had disclosed a service made on the infants, and a return showing that the service was not such as to give the court jurisdiction, the judgment would have been void, assuming, of course, that due service was a prerequisite of jurisdiction. It is of such a case that Mr. Freeman, in his work on Judgments, says : " This, however, does not present a case wherein the record is silent, but rather illustrates the proposition that, while one part of the record is silent, another part may bear witness to a jurisdictional infirmity destructive of the life and validity of the judgment."

The cases cited as upholding this proposition are *Swearengen* v. *Gulick* (67 Ill. 208) and *Bannon* v. *People* (1 Ill. App. 496); Freem. Judgm. (4th ed.) § 132, note 4.

In *Swearengen* v. *Gulick* nothing remained on the file of the judgment record except the decree and the master's report of sale. The decree did not recite that publication had been made after notice. The court say : " Had there been a notice and certificate of

publication found in the record, or had the decree recited that publication had been made, then the case would have been free from doubt, but neither of these appears in the record."

The judgment was, however, upheld. The court say: "The question of service is primary, and must be determined before proceeding to adjudicate, and it will be presumed in all collateral proceedings that a court of general jurisdiction heard evidence, and determined that there was sufficient service."

The second case cited (*Bannon* v. *People*) was a confession of judgment under a warrant of attorney authorizing confession upon a note, but the judgment assailed showed that the confession had been made by the attorney before the note became payable. The court held the warrant of attorney to be part of the record, and competent evidence in a collateral action, to impeach the judgment, because showing affirmatively a want of jurisdiction in the court. A similar case is *Smith* v. *Reid* (134 N. Y. 568), where the record, while reciting service of the summons on the infant defendants, and the appointment of a guardian *ad litem*, showed also that the infants were in this State when service was made, and that such service was made on their guardian, while the statute only permitted service on the guardian in case the infants were temporarily out of the State. The recital showing jurisdiction was thus contradicted by other recitals showing a want of jurisdiction. To the same effect is *Settlemier* v. *Sullivan* (97 U. S. 444), where the record of a judgment by default showed service of the summons in a suit in the State of Oregon on the wife of a defendant, without showing that the defendant could not be found, while the State statute permitted such service only in case the defendant could not be found. It was held that the record was not silent as to the jurisdictional fact, but showed a non-compliance with the statute, which contradicted the recital in the judgment that the "defendant, although duly served with process, came not, but made default."

The court say: "If the record is silent in respect to any fact which must have been established before the court could have rightly acted, it will be presumed that such fact was properly brought to its knowledge. But, if the record give the evidence or make an averment with respect to a jurisdictional fact, it will be taken to speak the truth, and the whole truth, in that regard; and

no presumption will be allowed that other and different evidence was produced, or that the fact was otherwise than as averred. 'If, for example,' to give an illustration from the case of *Galpin* v. *Page* (18 Wall. 366), 'it appears from the return of the officer or the proof of service contained in the record that, the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at another and different place, or if it appear, in like manner, that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also.'"

There is in the case at bar nothing to bring it within the rule thus made applicable where one part of a record bears witness against another part. The record here shows the filing of the bill, and the issuing of the subpœna. Assuming that, according to a custom, it was delivered by the clerk to the plaintiff's solicitor, no one could serve it except the United States marshal, or one of his deputies, or some person specially authorized by the court. (Equity rule 15, Rules Sup. Ct. U. S., compiled and revised, Albany, 1869.) Rule 23 provides that the bill shall state in the prayer for process the names of any defendants known to be infants, so that the court may take order thereupon as justice may require upon the return of the, process, and rule 87 provides that guardians *ad litem* to defend a suit may be appointed by the court, which would properly be done on the return of the process. The record shows that the court appointed a guardian *ad litem* for the infant defendants, and the presumption is, therefore, according to the cases already cited, that whatever was necessary to give the court jurisdiction to make the appointment had been done, including the service of the infants with process, and the return showing such service. If the rule of presumption is of any value, it must certainly prevail when, as in the case at bar, the record is bare of any evidence on the subject, because the presumption is based on the absence of direct and positive evidence. The presumption from the silence of the record as to the fact of service and return of process cannot be controverted by its silence in respect to the delivery of the subpœna to the marshal, or of its return by that officer. If the court is presumed

to have had the necessary evidence before it of the jurisdictional facts when the appointment of the guardian *ad litem* was made, it is wholly immaterial whether that evidence now remains of record or not. The evidence from the clerk's office showed that the equity docket did not contain any entry of other matters in the progress of the cause which would properly have been the subject of entry. The answers of the infant defendants, respectively, though duly made by their guardian *ad litem*, and filed April 11, 1868, are not entered in the docket; and it was proved that, as to other cases besides the Drake suit, there had been a failure by the marshal, after service of the subpœna, to file a return of the service in the clerk's office. Notwithstanding diligent investigation, it appears that no trace can be found of the subpœna after its first issue. The United States marshal who was in office in 1868 is dead, and none of his papers are in the possession of his successor; so that nothing appears in evidence to prove or to disprove the actual fact of service. As no one but the marshal or a deputy could make service of the subpœna, the appointment of the guardian *ad litem* must be presumed to have been made on the return by him of the process. As said by Judge BRONSON in *Bloom* v. *Burdick* (1 Hill, 130, 136) the presumption that every officer does his duty is entitled to some weight, where, on the question of a jurisdictional fact, the evidence is conflicting. Here there is no evidence at all on which to raise a conflict, or to disturb the presumption of regularity.

As to the inference sought to be drawn from the absence of any statement in the moving papers for the appointment of the guardian *ad litem* in regard to the service of process on the infant defendants, it is, I think, inadmissible. A comparison of the petition and affidavits with the forms given in Daniell's Chancery Pleadings and Practice (5th ed., Appendix of Forms, p. 2138) — a work of the highest authority — shows that they are in exact accordance with those forms, and contain the precise recitals they prescribe. Nothing can be intended from the fact that these papers contain no recital as to the service of process on the infant defendants. The record must, therefore, be held to be wholly silent as to the fact of service on the infant defendants; and, this being the case, the presumption in aid of the jurisdiction is conclusive, unless there is some extrinsic evidence to overcome it.

The defendant offered in proof, from the files of the clerk's office, the papers relating to certain proceedings after the decree, to compel the purchasers at the receiver's sale to complete their purchase. These proceedings have been adverted to in a former part of this opinion, as including a stipulation between the solicitors of the plaintiffs and the solicitors of the purchasers to the effect, among other things, that, for the purposes of the motion to compel the purchasers to take the title, it was admitted that the infant defendants had not been served with the subpœna. This evidence was admitted at the trial of this action, under objection by the plaintiff as to its relevancy and competency, and the objection was reserved. The papers offered were admissible, not as parts of the record, but as relating to proceedings in the case leading up to the execution of the decree of sale. They were papers on file in the cause, and were brought from the clerk's office, and, if they had contained evidence as to the fact in respect to which doubt is claimed to exist, such evidence would have been competent on the question at issue. (*Bosworth* v. *Vandewalker*, 53 N. Y. 597, 602.) But on a scrutiny of the papers it is clear that their legal effect as evidence is only to prove that proceedings were had in the cause after the decree, in which, upon a motion to compel them to complete their purchase, the purchasers, at the receiver's auction sale, sought ineffectually, on various grounds, to be discharged by the court, and thereafter, on a withdrawal of the motion, were released from the purchase. Nothing which is averred in the papers is competent evidence of any fact in issue in this action. This is especially so as to the facts stated in the stipulation to be admitted, because by the terms of the stipulation the admission it contained was solely for the purpose of the motion in respect to which it was made. The defendant concedes this, as I understand, but claims that the fact of the proceeding, and of its not being met by proof then existing, if it ever existed, of the service of the subpœna, raises a conflict with the presumption of the service, and a reasonable doubt as to that fact. As the papers are no part of the judgment record, they must be regarded as extrinsic evidence, and so far as they show a proceeding in which an allegation was made by the purchasers, charging, among other things, that the infants never were served, such allegation would be of no avail to the defendant here,

in the absence of corroborative proof, and such proof is not furnished. The admission in the stipulation can have no effect to create any presumption, because it is wholly incompetent as evidence, and to assume that it was made because of the want of ability on the part of the receiver to prove the fact to which it relates would be an attempt to draw legal inferences from incompetent evidence. An approved test, where the validity of a title depends upon a presumption of fact, is whether the case is such that if it were before a jury it would be the duty of the judge to give a clear direction in favor of the fact, and not leave the evidence generally to the consideration of the jury. (Fry Spec. Perf. 436; *Emery* v. *Grocock*, 6 Madd. 54; *Fleming* v. *Burnham*, 100 N. Y. 1, 12.) Assuming that the Goodridge infants were in a court of law, in an action of ejectment to recover the premises in question, on the ground of invalidity, as to them, of the decree of sale in the Drake suit, by which their title was divested, because, in fact, they were not served with the subpœna in that suit, would the court be authorized to direct a nonsuit against them on the ground of the conclusiveness of the presumption in favor of the fact? I think this question must be answered in the affirmative.

On this branch of the case my conclusion, therefore, is that, assuming service of the subpœna in the Drake suit on the Goodridge infants to be a jurisdictional fact, the fact is presumptively established by the judgment record in that suit; that such presumption has not been overcome by anything appearing in the record, or by any competent extrinsic proof; and that there is no reasonable doubt as to the regularity or validity of the proceedings in the Drake suit to bind the infant defendants.

If the above-stated conclusions are right, the result must be that the title tendered by the plaintiff in this action to the defendant is good and marketable, irrespective of the further question whether service of process upon the infant defendants was essential to the jurisdiction of the court over them in the Drake suit. But, even if a reasonable doubt as to the title could be predicated in reference to the presumption of validity established by the judgment record in that suit, the inquiry remains whether the court could acquire and exercise jurisdiction over these infant defendants in any other way than by the service of process upon them. If

jurisdiction could be and was acquired in the absence of service of the process, it is of no consequence whether the process was or was not served upon them. They are bound by the decree, and by the sale made pursuant to its direction. What the court did was to appoint a guardian *ad litem* for these infant defendants after appearance entered in the suit, in their names, by a solicitor of the court, and on the petition of their mother, who was their natural guardian. The precise question, on this branch of the case, is whether any reasonable doubt exists as to the jurisdiction of the court over the infants, as thus exercised, without the service of process on the infants themselves. If the court could acquire jurisdiction in the suit over these infants only by service upon them of the subpœna, then, in the absence of such service, the appointment of the guardian *ad litem,* and all other acts of the court in the suit, were, so far as these infants are concerned, wholly nugatory; the decree of sale was, as to them, utterly void, and no title passed by the deed given by the receiver under it. (*Rogers* v. *Dill,* 6 Hill, 415.) Unquestionably, if there existed in 1868 any statute of the United States, or any rule of the United States Supreme Court, making service of process on infant defendants in equity suits a prerequisite of jurisdiction, either as to its acquisition or its exercise, the court would be bound thereby, and could only acquire and exercise jurisdiction in the manner prescribed by such statute or rule. It has been uniformly held that, where the law has prescribed a particular mode by which a court shall acquire jurisdiction, it can acquire it in no other way, and if it undertakes to proceed in disregard of the statutory requirements, its judgment is a nullity, and will be so treated whenever it comes in question, either directly or collaterally. (*Risley* v. *Bank,* 83 N. Y. 318, 337, and cases cited; *Crouter* v. *Crouter,* 133 id. 55.) For example, in the State of New York the Code of Procedure in force in 1881 prescribed that civil actions should be commenced by the service of a summons, and that, in the case of a defendant being an infant under fourteen years of age, personal service should be made on such infant in a specified manner. In *Ingersoll* v. *Mangam* (84 N. Y. 622) the validity of a judgment was drawn in question, where the court, in a foreclosure suit, had proceeded to judgment and sale without service of the summons having been made on the infant defendant in the

manner prescribed by the statute, his mother having procured the appointment of a guardian *ad litem* for him, who appeared in the action, and answered for the infant. The purchaser at the foreclosure sale declined to take the title, on the ground of reasonable doubt whether the court had acquired jurisdiction, and he was discharged from his purchase by the Supreme Court. (*Ingersoll* v. *Mangam*, 24 Hun, 202.) The Court of Appeals affirmed the order, on the ground that foreclosure suits were governed by the requirements of the Code as to the commencement of civil actions, and said (84 N. Y. 627): "The Legislature has seen fit to prescribe that the summons shall be served on infant defendants. This was the mode defined by statute for acquiring jurisdiction over their persons and property. It is no answer to the objection that the statute has not been complied with in respect to the mode of service, that the infant is of such tender years that he would have derived no benefit from the service, if made, or that it would have been competent for the Legislature to have provided that service upon the parent or guardian should stand as service upon the infant. The statute has prescribed how jurisdiction shall be acquired, and courts cannot dispense with its observance."

If, therefore, in the case at bar, there existed in 1868 any statutory prerequisite of jurisdiction in the United States Circuit Court, such as existed in reference to the State court in *Ingersoll* v. *Mangam*, that case would be a controlling authority in favor of the defendant's contention, and he should be discharged from his purchase. But the Court of Appeals, in its opinion, took care to guard against any assertion of the rule excluding jurisdiction where there was no statutory requirement, and expressly instanced equitable actions in partition as being exempt from the operation of the provisions of the Code of Procedure. They say that in such actions, the Code not being in force, but the provisions of the Revised Statutes relating to proceedings by petition for partition, which by a section of the same Code were made applicable to actions of partition, "jurisdiction over the person and property of infants was acquired by the appointment of a guardian in the first instance, upon notice to such infants or to their general guardian. Service of notice upon the infants was not indispensable to the exercise of the jurisdiction;" citing *Croghan* v. *Livingston* (17 N. Y. 218); *Goten-*

*dorf* v. *Goldschmidt* (83 id. 110). In the last-named case it was expressly held, in an equity suit for partition, that personal service of summons upon an infant defendant was not essential, and that the appointment of a guardian *ad litem* without such service was sufficient to give jurisdiction, and to authorize the court to proceed to judgment against the infant defendant. There can be no possible difficulty in applying the plain rule laid down by the authorities to which reference has been made. Where personal service of process on an infant defendant is, by law, a jurisdictional fact, as in foreclosure suits in New York, the absence of that fact deprives the court of jurisdiction, because it cannot lawfully acquire jurisdiction in any other way. Where there is no law requiring personal service of process on an infant defendant, the service of process is not a jurisdictional fact, and the jurisdiction may be exercised without reference to that fact, as in partition suits in the State of New York, the jurisdiction in the latter class of suits being upheld where, on the application of the natural guardian of the infant defendant, the court appointed a guardian *ad litem*, and proceeded to judgment, without any service of process on the infant. The inquiry, therefore, must be as to the mode of acquiring jurisdiction by Circuit Courts of the United States, in 1868, over the person and property of an infant defendant in an equity suit. The grant of judicial power contained in the Constitution of the United States extends to all cases in equity between citizens of any State and foreign citizens or subjects. (Const. U. S. art. 3, § 2.) The act of Congress of May 8, 1792 (Chap. 36, § 2), provides that the mode of procedure in courts of equity shall be according to the principles, rules and usages which govern courts of equity, as distinguished from courts of common law, subject to regulation by statute or by rules of the court made in pursuance thereof, and also subject to regulation by the rules of the Supreme Court. This is the whole extent of statutory regulation as to the jurisdiction of the Circuit Courts of the United States in equity. Under the authority given by Congress the Supreme Court, at February term, 1822, promulgated rules of practice for the courts of equity of the United States, to take effect July 1, 1822. (Equity Rules, 7 Wheat. p. v.) In *Story* v. *Livingston* (13 Pet. 359) it is said that these rules are obligatory on all the United States courts, and, where they do

not apply, " the practice of the Circuit and District Courts shall be regulated by the practice of the High Court of Chancery in England " (page 368); and Judge STORY had previously said, in *Pratt* v. *Northam*, 5 Mason, 95, 105 : " It has been often decided by the Supreme Court that the equity jurisdiction of the United States is not limited or restrained by the local remedies in the different States ; that it is the same in all the States, and is the same which is exercised in the land of our ancestors, from whose jurisprudence our own is derived."

In January, 1842, the Supreme Court revised the equity rules and promulgated them anew, to take effect August 1, 1842 (Equity Rules, 1 How. 69), and these rules regulated the procedure of the Circuit Courts of the United States in equity in 1868. Rule 90 is as follows : ·

" In all cases where the rules prescribed by this court or by the Circuit Court do not apply, the practice of the Circuit Court shall be regulated by the present practice of the High Court of Chancery in England, so far as the same may reasonably be applied consistently with the local circumstances and local convenience of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice."

When the above rule took effect the general orders of the High Court of Chancery in force were those which had been issued up to April 11, 1842, and they contained no directions as to any special mode of service of subpœna on infant defendants, or anything in the nature of a condition precedent as to the acquisition of jurisdiction over infant defendants, as contradistinguished from adult defendants. The United States equity rules of 1842 provide that " the process of subpœna shall constitute the proper mesne process in all suits in equity, in the first instance, to require the defendant to appear and answer the exigency of the bill " (rule 7), and shall not issue from the clerk's office in any suit in equity until the bill is filed in the office (rule 11), and shall then issue thereon, as of course, and be returnable into the clerk's office the next rule day, or the next but one, after twenty days from the issuing thereof. At the bottom of the subpœna shall be placed a memorandum that the defendant is to enter his appearance in the clerk's office on or before the day at which the writ is returnable ; otherwise, the bill may be

taken *pro confesso* (rule 12). It is then provided, by rule 13, that " the service of all subpœnas shall be by a delivery of a copy thereof by the officer serving the same to the defendant personally, or, in case of husband and wife, to the husband personally, or by leaving a copy thereof at the dwelling house or usual place of abode of each defendant, with some free, white person who is a member or resident in the family." No different mode of service is prescribed as to infant defendants from that prescribed as to adult defendants. Rule 15 provides that " the service of all process, mesne and final, shall be by the marshal of the district or his deputy, or by some other person specially appointed by the court for that purpose, and not otherwise." Rule 17 provides that the appearance day of the defendant shall be the rule day to which the subpœna is returnable, provided he has been served with process twenty days before that day, and that the appearance of the defendant, either personally or by his solicitor, shall be entered in the order book on the day thereof by the clerk. Rule 23 provides that the prayer for the process of subpœna in the bill shall contain the names of all the defendants in the bill, " and, if any of them are known to be infants under age, or otherwise under guardianship, shall state the fact, so that the court may take order thereon, as justice may require upon the return of the process." Rule 87 is as follows : " Guardians *ad litem* to defend a suit may be appointed by the court or by any judge thereof, for infants or other persons who are under guardianship or otherwise incapable to sue for themselves."

It thus appears that, while it was competent for Congress, by statute, or for the Supreme Court, by rule, to prescribe the manner in which infant defendants in equity suits in a Federal court shall be subjected to the jurisdiction of the court, this subject had not, up to 1868, been regulated either by statute or by rule. In most of the States, as in our own State, as already shown, there are positive statutory regulations on this subject, binding on the State courts, so that conformity to them is essential to the jurisdiction over infants ; but these State regulations in no way affect the United States courts, and we are remitted to the practice of the English High Court of Chancery for the rule of procedure, so far as the equity rules are

silent. As already seen, the equity rules provide one and the same course for the service of the subpœna on all the defendants, and treat all as alike capable of appearing, either personally or by solicitor, and prescribe for all of them the same appearance day. As to infants, after return of process, the court is to proceed as justice may require, and may appoint a guardian *ad litem* to defend the suit. Recurring to the judgment record in the Drake suit, it shows that after the filing of the bill and the issuing of the subpœna an appearance was entered by a solicitor for the infant defendants, followed by a petition on their behalf, by their mother, for the appointment of a guardian *ad litem*, stating, according to the form given in Daniell's Chancery Pleadings and Practice, already cited, which is identical with that given in Smith's Chancery Practice (page 576), that a bill had been filed and that the petitioners have entered their appearance, and are preparing to answer the same; that the petitioners are infants, and that the person named is a proper person to be appointed guardian *ad litem* to defend the suit. This was in accordance with the course of practice in the English High Court of Chancery. The jurisdiction of that court over the persons and estates of infants, whether originally derived from the crown as *parens patriæ*, and thence transferred to the court, or assumed as customary law, without formal delegation, is firmly established as a judicial function of the court, and is exercised by the Chancery judges as a matter of discretion, except so far as the power is curtailed or regulated by statute. (3 Pom. Eq. Juris. § 1304; 2 Story's Eq. Juris. §§ 1327, 1334.) And when an infant is made party defendant in a suit, although he may not be under a general guardian appointed by the court, he is treated as a ward of the court and as being under its special cognizance and protection. (2 Story's Eq. Juris. § 1357.) In Chambers' Law of Infants (Introduction, p. 25) it is said that an infant made a ward of the court by bill is " in every sense under its protection and control. The mere filing of a bill, to which the infant is a party, makes an infant a ward of court, * * * and, when the infant is once a ward, any matter may then be determined on petition or motion." In McPherson on Infants (p. 396) it is said: " Where a suit is instituted against an infant his infancy is not noticed in the bill, unless it be a material fact in the cause, and he is served with the subpœna and must

appear in the usual way." It is further said : "A solicitor ought not to take upon himself to appear for an infant defendant without some authority from the infant's friends. * * * After an appearance has been entered for the infant the court appoints a guardian to conduct his defense, * * * called ' guardian *ad litem.*'" And the practice as to the appointment of guardians *ad litem* is then given in detail. It is said in Smith's Chancery Practice (vol. 1, p. 122) that " the appearance of the defendant is necessary, except where otherwise provided for by act of Parliament, to give the court jurisdiction over the subject-matter in dispute." The directions given in the work as to the service of the subpœna are the same in respect to infant as to adult defendants, and it is nowhere intimated that personal service on them is a prerequisite to the appointment of a guardian *ad litem* when they voluntarily appear and application is made on their behalf for such appointment. In case of non-appearance, proceedings might be taken by the plaintiff against the infant defendant to compel appearance, and to bring the infant before the court by a messenger or by a commission, in order to have a guardian appointed. (Pages 113, 114, 145.) The cases are numerous which show that the court exercised its jurisdiction over infant defendants, and appointed a guardian *ad litem*, after appearance in their behalf by a solicitor upon their application, or upon that of the plaintiff when the infant failed to apply, and where there had been no service of the subpœna upon them. A voluntary appearance by any defendant, adult or infant, was all that was necessary to call for and justify the action of the court in assuming jurisdiction. Lord REDESDALE says, in his treatise on Pleadings and Practice in Equity : " It is a rule in equity practice that no decree can be passed against a defendant without his real or constructive appearance. By his appearance he submits to the jurisdiction of the court." (Mitf. Pl. & Pr. 432.)

In practice this rule included infant defendants.

In *Cookson* v. *Lee* (15 Sim. 302) the infant defendant had appeared by a solicitor, and, the time to answer the bill having expired, the plaintiff moved for the appointment of a guardian *ad litem*. The question was raised whether there ought not to be proof of service of the subpœna, and of notice of the motion. " The vice-chancel-

lor said that, as the infant had appeared, the service of the notice of motion on the solicitor who had entered the appearance was sufficient, and that an affidavit of the service of the subpœna was not necessary, and, therefore, he should make the order."

*Lloyd* v. *Rossmore* (Irish Reports [9 Eq. Series], 488) seems precisely in point. An application was made to the vice-chancellor, on behalf of an infant, for the appointment of a guardian *ad litem.* The infant had not been served, but an appearance had been entered for him by a solicitor, and the question was whether, without service on the infant, the guardian could be appointed. The case stood over for a week, and the vice-chancellor then rendered his decision as follows : " It is alleged that there is a difficulty in this case, because the infant defendant has not been served, but I am of opinion that a guardian may be appointed notwithstanding this fact. Any defendant, whether an infant or of full age, may appear gratis. If an appearance has been entered for an infant an affidavit of service of the subpœna is not necessary to entitle the plaintiff to appoint a guardian. (*Cookson* v. *Lee*, 15 Sim. 302.) And in *Wood* v. *Logsden* (9 Hare Append. 26) proof of appearance of the infant to a claim was held sufficient to enable the court to dispense with an affidavit of the service of the writ of summons. So, also, in *Bentley* v. *Robinson* (9 Hare Append. 76). Application should, in such case, be made to the solicitor who has entered the appearance to appoint a guardian. Appearances are entered for infants in the same way as in the case of defendants ; and if a solicitor, without any instruction, causes an appearance to be entered for an infant defendant, the appearance will be set aside (1 Daniell Ch. Pr. [5th ed.] p. 533, citing *Richards* v. *Dadley* [not reported] and *Leese* v. *Knight*, 8 Jur. [N. S.] 1006 ; 10 Wkly. Rep. 711), which shows that if such instructions had been given the appearance would have been regular. I am of opinion that a solicitor must be taken, in the absence of proof to the contrary, to have authority from his client to enter an appearance, and that that may be although the party is an infant, and that when once the appearance has been entered the court will act upon it without service."

It was the constant practice of the Court of Chancery to prescribe the mode of bringing the infant defendants within the jurisdiction of the court, by directing what should be sufficient service

of the subpœna, both as to resident and non-resident infant defendants, and whether the issuing of a commission should be required or dispensed with, in order to save expense, or for any other reason. Manifestly, the court would have had no power to direct a mode of substituted service, of its own motion, and without the authority of a statute or general order, if it did not possess such power as an incident of its jurisdiction over infants. A plain distinction exists between jurisdiction and the exercise of jurisdiction. (*Bangs* v. *Duckinfield*, 18 N. Y. 592.) Where a court has jurisdiction of the subject-matter and of the parties, in case they are properly brought before it, as in the case at bar, which was that of a judgment creditor's suit against persons within its territorial jurisdiction, in aid of liens asserted as to property within the same jurisdiction, no question can arise, except as to the acts of the court in the exercise of a jurisdiction which belongs to it. Where a court has no jurisdiction to proceed at all, its acts must be void. Thus, in England, the Court of Chancery has uniformly held that it had no jurisdiction to direct the sale of infant's lands on petition, Lord HARDWICKE saying, in *Taylor* v. *Philips* (2 Ves. Sr. 23) "there is no instance of this court's binding the inheritance of an infant by any discretionary act of the court;" and in *Russel* v. *Russel* (1 Moll. 525), the vice-chancellor said that since that decision of Lord HARDWICKE "the chancellor has never since attempted to deal with the legal inheritance of infants without the aid of an Act of Parliament." And the same rule was applied in our Court of Chancery. (*Rogers* v. *Dill*, 6 Hill, 415.) But where the court had inherent jurisdiction over the subject and over the parties, the mode of the exercise of such jurisdiction, in the absence of statutory regulations, was discretionary; and accordingly we find that in determining the course of practice as to infant defendants, and the exercise of jurisdiction in regard to them, whether resident or non-resident, the court was governed by its own precedents, and acted on its own discretion.

Instances of the control of the court over the manner of serving the subpœna and of bringing infant defendants into court, where the infants were non-resident or concealed, or could not be found within the jurisdiction, and the mode of substituted service was directed by the court according to its discretion, are found in *Thompson* v. *Jones* (8 Ves. 141); *Jongsma* v. *Pfiel* (9 id. 357);

*Lingren* v. *Lingren* (7 Beav. 66); *Smith* v. *Palmer* (3 id. 10); *Lane* v. *Hardwicke* (5 id. 222); *Wood* v. *Logsden* (9 Hare Append. 26). Instances of the exercise of a like power as to infants within the jurisdiction, in addition to the cases already cited, are the following: In *Stillwell* v. *Blair* (13 Sim. 399) there were twenty infant defendants in the suit, two of them residing within twenty miles of London, appearing in court for the purpose of having a guardian *ad litem* assigned to them. Their solicitors stated that the rest of the infants, who were within the jurisdiction, resided in different counties, more than fifty miles from London, and, to save the expense of commissions, applied to the court to appoint the same guardian as assigned to the two for the others, and the order was made. *In re Williams* v. *Greaves* (2 Wkly. Rep. 355) application was made to the Lord Chancellor for the appointment of a guardian *ad litem* for an infant respondent on an application for property under a railway act. There had been no service of process on the infant. The court appointed the guardian, saying that the jurisdiction arose from " the necessity of taking care of such persons." In *Fletcher* v. *Rogers* (1 Wkly. Rep. 74) a guardian *ad litem* was apppointed, without a commission, to save expense. No English case has been cited by the learned counsel for the defendant, invalidating or questioning a decree of the High Court of Chancery rendered against an infant defendant, in the exercise of jurisdiction, after appearance by a solicitor, and the appointment of a guardian *ad litem* by the court on the application of the natural guardian of the infant, without service of process, nor can I find that any judicial doubt has ever existed in the English courts on the subject. As the practice of the English High Court of Chancery governed the procedure of the United States Circuit Courts in 1868, the jurisdiction exercised in the Drake suit by the appointment by Judge BLATCHFORD of the guardian *ad litem* for the infant Goodridge defendants, after appearance by a solicitor in their behalf, was in accordance with that practice and was a valid exercise of jurisdiction. The appearance of the infants after the filing of the bill and the issuing of the subpœna was the equivalent of personal service upon them of the subpœna, and dispensed with the necessity of such service; and they could not be heard to allege, after such appearance and the appointment of a guardian *ad litem*

for them by the court on the application of their mother, that the subsequent proceedings were void for want of jurisdiction because they were not personally served with the subpœna.

It is correctly stated in the brief of the learned counsel for the defendant that in some instances the appointment of a guardian *ad litem* without previous service of process upon infant defendants, and without a commission, was allowed by the Court of Chancery in England where the circumstances were such that a commision would involve undue expense, in cases of resident infants, as well as where the infants were concealed, and upon the presentation of a proper case, such action by the court being a sort of substituted service, analogous to our service in pursuance of statutory provisions by special order on defendants outside the State, or service by publication. This conceded course of practice, which, as already seen, extended also to cases of non-resident infants, seems to me conclusive on the question that service of process on infant defendants was not a prerequisite to the jurisdiction of the court in any case where the appointment of a guardian *ad litem* was concerned. Our courts have no power, in the absence of a statute conferring it, to authorize any method of substituted service, while the English Court of Chancery had the power, wholly irrespective of statute, and exercised it according to its discretion, in reference to infants outside the realm, as well as those resident within the jurisdiction. If the court could, by virtue of its inherent powers, appoint a guardian *ad litem* where no process had been served, and prescribe a mode of service where the infant was non-resident, or could not be found within its territorial jurisdiction, the same power could undoubtedly be exercised, in the absence of statutory prohibition, as to resident infants, voluntarily appearing and asking the aid of the court. It is not at all necessary to hold that the Circuit Courts of the United States, in the exercise of their powers conformably to the practice of the High Court of Chancery in England, as provided by rule 90 (United States Equity Rules), are invested with the plenary power of the court, as *parens patriæ*. As clearly pointed out by Mr. Justice FIELD in *Insurance Co.* v. *Bangs* (103 U. S. 438), the States of the United States and not the Federal Government, except as to the District of Columbia, stand, in reference to the person and property of infants, in the situation of *parens patriæ*, and, therefore, in a case

where the infant sought to be charged had no property within the district to which the territorial jurisdiction of the Circuit Court of the United States was confined, and was not within the jurisdiction, there is no authority in the Circuit Court to appoint a guardian *ad litem*, by virtue of any supposed general power of courts of equity over the person and property of infants. Accordingly, says Mr. Justice FIELD: " The authority of the Federal courts can only be invoked within the limits of a State, for such an appointment, where property of the infant is involved in legal proceedings before them, and needs the care and supervision of an officer of that kind. * * * And those courts will always see that a proper guardian *ad litem* has charge of the infant's interests, where his property is involved in proceedings before them."

He goes on to say that in the case under consideration the infant possessed no property in Michigan, where the suit in equity was commenced against him, nor did the suit concern any property, real or personal, but was brought to cancel a personal contract made with the infant's father, and, under such circumstances, any decree respecting it " would necessarily have been *coram non judice*, unless the parties interested were before the court upon the service of a subpœna, or their voluntary appearance. The infant, being absent from the State, could not be personally served."

It is thus clear that the Federal courts have original jurisdiction, in respect to infants, commensurate with that of the English Court of Chancery, when the particular facts of the case show that property of the infant is within the district, and that the residence of the infant is within the same limits, so as to give the court jurisdiction over both subject-matter and person, and the jurisdiction thus acquired must be co-extensive, for all purposes, with that of courts of equity of the State. Otherwise, infant citizens of the United States, resident within the territorial jurisdiction of the United States Circuit Court, when impleaded as defendants in an action properly cognizable in that court, and affecting property situated within its jurisdiction, would not have like protection as that accorded by the laws of their own State in similar actions brought in the State court. It would be strange if the unqualified delegation by the States to the Federal courts of jurisdiction, in equity, in suits by subjects of a foreign country against citizens of a State, did

not give the Federal courts plenary powers for the protection of infant defendants, when such jurisdiction is invoked against them. Messrs. Drake, Kleinwort & Cohen had the right to sue their debtors in New York, either in the State or the Federal court. They brought their common-law actions in the former, and their equity suits in the latter. It is inadmissible to assume that the Federal court had not power to protect the infant defendants in the equity suit, equal to that which the State court would have had, in case the complainants had proceeded in the State court. The difference related only to the procedure, which in the Federal court was regulated, not by State law, but by Federal law.

Our own reports are not wanting in cases holding that, in the absence of any statutory inhibition, the voluntary appearance of an infant defendant in an equity suit, by a solicitor, is equivalent to personal service of process upon him. In *Varian* v. *Stevens* (2 Duer, 635), the appointment of a general guardian of infant defendants in a partition suit, as their guardian *ad litem*, was objected to because the guardian had been appointed after an appearance entered for the infants, but without personal service upon them; the objection was overruled, and the purchaser compelled to complete his purchase, on the ground that, although the Code required personal service, it also provided that voluntary appearance of the defendant should be " equivalent to personal service of the summons upon him," and that an appearance on their behalf (*i. e.*, the infant defendants) " dispensed with the personal service." And in *Rogers* v. *McLean* (34 N. Y. 536) the Court of Appeals held that it was the settled law, as decided in *Croghan* v. *Livingston* (17 N. Y. 218), after full consideration, that the Court of Chancery had original jurisdiction of the action, which was for a partition of lands, without the aid of any statute; that the plaintiff was not bound, in his bill, to notice the fact that the defendants — any or all of them — were infants, but he might frame his bill and issue a subpoena as if they were all adults; and it is then said: " After they were brought in upon process, it was necessary, both at law and in equity, that guardians should be appointed for the infant defendants, but that no law could be found holding that a judgment or decree, when they appeared by attorney, would be void."

The papers produced by the defendant from the files of the court in reference to the proceeding, after the decree in the Drake suit, in which the purchasers at the receiver's public sale claimed to be discharged on the ground, among others, of the non-service of the subpœna on the Goodridge infants, show that this objection was overruled by the court. As already seen, a stipulation has been made by the parties to it to the effect that it should be assumed, for the purposes of the proceeding, that the infants were not served with process. While this stipulation is not evidence in this action as to any fact, and does not, by its terms, relate to any fact at issue here, it is proof that the legal question of the validity of the sale, on the assumption that the infant defendants were not served with process, was passed upon by the court, and that its decision upheld the sale. No opinion was filed, and the decision was not reviewed on appeal, as the purchasers were discharged by the voluntary act of the receiver; and a private sale was made, under the decree, as amended, to that end. The effect of the proof on this branch of the case is only to show that the attention of the court was called to the question whether it had exercised its jurisdiction improperly or irregularly, and that its decision was in favor of the jurisdiction it had assumed.

If this decision of Judge BLATCHFORD were in conflict with any adjudged case in the Federal courts on the jurisdictional question involved here, I should not regard it as binding, but I do not find any conflicting adjudication. The authorities cited by the learned counsel for the defendant do not seem to me to be applicable. Where the Federal courts have had to deal with jurisdictional questions arising under State statutes, they are necessarily confined to determining the effect of the local law, and the application of those laws prescribing the prerequisites or limits of jurisdiction in no way touch the point of the original equity jurisdiction of the Federal courts. Thus, in *Earle* v. *McVeigh* (91 U. S. 503) the question was as to the prerequisites of jurisdiction, under the statute of Virginia, as to service of process against non-residents. In *Pennoyer* v. *Neff* (95 U. S. 714) and in *Settlemier* v. *Sullivan* (97 id. 444) the question of jurisdiction arose on the provisions of the statutes of Oregon as to service of process — in the former case, as to service on husband and wife by publication, and in the latter case as to non-resi-

dents, and the effect to be given the State statutes, respectively, in the Federal courts. In *Cheely* v. *Clayton* (110 U. S. 701) the case turned on a like question of sufficient service under the statutes of Colorado. *Insurance Co.* v. *Bangs*, already referred to, is wholly aside from the point involved here. It held only that the United States Circuit Court could not, under any general equity power, acquire jurisdiction in the State of Minnesota over a non-resident infant, in a purely personal action, where the infant had no property in the State, and had never been served with process. The case most strongly pressed on behalf of the defendant as a controlling authority is *Woolridge* v. *McKenna* (8 Fed. Rep. 650), where the question involved arose on a motion to remand to the State court of Tennessee a suit in equity attempted to be removed into the United States Circuit Court by the father of an infant defendant absent from the State in which the suit was commenced, and before the infant defendant had been properly bound to defend in the State court. In discussing one of the many questions arising in the cause, the learned judge uses the following language : " In original cases in the courts of the United States, sitting in equity, there can be no defense otherwise than by guardian *ad litem*, and one cannot be appointed, nor the infant bound, until service of process upon him. (Equity rule 87; *Bank* v. *Ritchie*, 8 Pet. 128; *O'Hara* v. *MacConnell*, 93 U. S. 150; *Insurance Co.* v. *Bangs*, 103 id. 435; *Carrington* v. *Brents*, 1 McLean, 174.)"

The point intended to be emphasized by this dictum, evidently, was that there was no power in the court to treat any other kind of service as a substitute for personal service, for the learned district judge goes on to say that while, under the English Chancery practice applicable under rules 87 and 90 of the Supreme Court, a guardian *ad litem* is appointed to defend for an infant, " never is the service of process upon the guardian alone, or upon the parent, or other substituted process of that character sufficient to bind the infant, where he is personally an essential party defendant. It must be served on him in person. See the authorities above." As a general proposition, this is unquestionably true, but if it was intended as a statement that where an infant defendant appeared by an attorney, and the court, on such appearance, and on the petition of the natural guardian, appointed a guardian *ad litem*, it would not acquire

jurisdiction without previous personal service of the process on the infant defendant, it is in conflict with the authorities, and is wholly unsupported by the cases cited in its support. This will appear on a scrutiny of the citations in the order in which they appear in the opinion. Equity rule 87 is entirely silent as to the service on the infant defendants, and simply empowers the court to appoint guardians *ad litem.* In *Bank* v. *Ritchie* (8 Pet. 128) a bill was filed in the Supreme Court of the United States for the District of Columbia to review a decree of that court upon various grounds, one of which was that the court "appointed a guardian *ad litem* without naming the infant defendants, or causing them to be brought into court to have a guardian appointed, and without any averment or proof that either of them was a minor." (Page 131.) The court held in regard to this assignment of error as follows: "In all suits brought against infants, whom the law supposes to be incapable of understanding and managing their own affairs, the duty of watching over their interests devolves, in a considerable degree, upon the court. They defend by guardian to be appointed by the court, who is usually the nearest relation not concerned, in point of interest, in the matter in question. It is not error, but it is calculated to awaken attention, that, in this case, though the infants, as the record shows, had parents living, a person not appearing, from his name, or shown on the record, to be connected with them, was appointed their guardian *ad litem.* He was appointed on the motion of the counsel for the plaintiffs, without bringing the minors into court, or issuing a commission for the purpose of making the appointment. This is contrary to the most approved usage, and is certainly a mark of inexcusable inattention. The adversary's counsel is not the person to name the guardian to defend the infants."

The decree under review was reversed upon other grounds, and there is nothing in the opinion of Chief Justice MARSHALL intimating that the service of process upon the infant defendants was such a prerequisite of the jurisdiction of the court as to render the final decree void for want of it. On the contrary, the criticism, as made, related to the person appointed as the guardian *ad litem,* and to the fact that the plaintiff named him without any action whatever to bring the infants into court.

*O'Hara* v. *MacConnell* (93 U. S. 150) was an appeal from a

decree of the United States Circuit Court for the western district of Pennsylvania, entered against a minor who was a married woman, without appointment of any guardian *ad litem*, or any appearance by or for her. The court say : "It was the duty of the court, where the bill, on its face, showed that the party whose interest was the principal one to be affected by the decree was both a minor and a *feme covert*, and that no one appeared for her, in any manner to protect her interest, to have appointed a guardian *ad litem* for that purpose. If neither her husband, nor he who is styled her guardian in the bill, appeared to defend her interest, it was the more imperative that the court should have appointed some one to do it. * * * It was, therefore, error in the court to proceed to a decree without appointing a guardian *ad litem*."

There is no suggestion that personal service of the minor defendant was a prerequisite to jurisdiction, much less that want of such service would render the decree void.

*Insurance Co.* v. *Bangs* has already been referred to. The record there of an equity suit in Michigan to cancel a contract made by the father of an infant defendant showed an attempt to acquire jurisdiction over such infant, notwithstanding he was a non-resident of the State, and possessed no property in it, and that the suit did not concern any property, real or personal, within the State, belonging to the infant. The opinion expressly distinguished it from cases affecting the interest of infants in real property within the State of their residence, and cited with approbation cases where decrees of judgments have been upheld though rendered where a guardian *ad litem* had been appointed, "without service of process on the infant." (103 U. S. 440.)

The last case cited by Judge HAMMOND is *Carrington* v. *Brents* (1 McLean, 174) in which Judge MCLEAN held, expressly, that while it did not appear that, in the suit which was under review before him, process had been served on the infant, or a guardian *ad litem* appointed by the court, and that for these omissions or errors the decree might have been reversed by an appellate court, these were only irregularities, and did not render the judgment void.

I think it is clear that the dictum of Judge HAMMOND is meant only to express the general proposition that infant defendants must

be served with process as other defendants are served, and that the court will not take action in regard to them until they have been brought before it in the same manner as other defendants, but does not mean that they cannot appear by attorney, and petition by their natural guardian for the appointment of a guardian *ad litem*, and thus give the court jurisdiction to protect their interests. Such a proposition would be directly counter to what is said by Mr. Justice McLean in *Lessee of Nelson* v. *Moon* (*supra*) as to the appointment of a guardian *ad litem* on an appearance by attorney without service of process on the infants : " A judgment or a decree may be treated as a nullity if it appear from the record that there was neither a service of process nor a waiver of it. But in the present case there was an appearance according to the forms of law, and that gave jurisdiction to the court."

In *Robb* v. *Lessee of Irwin* (15 Ohio, 689) the court considered the whole question whether infants can be made parties defendant in a Chancery suit, so as to bind them by a decree, without personal service, merely by the appointment of a guardian *ad litem*, and held that decrees entered under such circumstances are generally, if not universally, upheld. The Supreme Court of the United States in *Insurance Co.* v. *Bangs* (*supra*) refer with approval to the case last cited, and say : " In *Robb* v. *Lessee of Irwin* it appeared that a guardian *ad litem* for infant heirs had been appointed in a proceeding for the sale of certain real property in which they were interested. In an action of ejectment subsequently brought by the heirs, it was held by the Supreme Court of Ohio that the proceeding was not vitiated by the appointment of the guardian *ad litem* without previous service of process on the infant."

After a careful examination of the question I see no reasonable ground of objection to the validity of the decree in the Drake suit, for want of service of process on the Goodridge infants, jurisdiction having been acquired by the court by their voluntary appearance, and the appointment of a guardian *ad litem*, on the application of their natural guardian. To hold otherwise would involve the assumption that the English Court of Chancery acted without authority in all the cases where the court controlled the manner of service of process on infants according to its discretion, and exercised jurisdiction by appointing guardians *ad litem* when no service

had been made on the infant defendants sought to be bound, and would also be against the weight of authority in the Federal courts, and the courts of this State and of other States. Upon both branches of the case, and upon the facts and the law, as they appear to me, I am, therefore, of opinion that no reasonable doubt exists as to the validity of the title to the entire premises in question, tendered by the plaintiff to the defendant; that such title was and is good and marketable; that the plaintiff is entitled to a specific performance by the defendant of the contract alleged in the complaint; and that judgment for such specific performance should be entered. Following some precedents which seem to me to be applicable here, in reference to the rule as to costs in cases of this description, I think the judgment should be without costs.

*William G. Choate*, for the appellant.

*M. B. Maclay*, for the respondent.

PARKER, J. :

The judgment appealed from requires the defendant to perform a certain contract by which he had agreed to pay $650,000 for certain lands situated on Broadway and Thirty-second street, in the city of New York. Defendant Martin's objection to a completion of the contract of purchase was based on an alleged defect of title. The facts which persuaded him that his objection was well taken may be briefly stated as follows :

The death of Ezra R. Goodridge in August, 1867, dissolved the firm of Ezra R. Goodridge & Co., and immediately afterwards certain foreign creditors commenced actions in the Supreme Court of this State, in which actions warrants of attachment against the firm property were issued and levied upon its real property, including the property in question, of which Ezra R. Goodridge individually was the apparent owner. In January, 1868, such creditors filed a bill in equity in the Circuit Court of the United States for the southern district of New York, making the necessary persons parties, and including among others two children of Ezra R. Goodridge, aged respectively two and three years.

It was alleged in the bill that the premises in controversy were in fact partnership property, although the record title was in Ezra

R. Goodridge individually at the time of his death. The bill was filed January 13, 1868, and on the same day a subpœna was issued, but there is no entry in the docket of the clerk (which contains all other proper and necessary entries) of a return of the subpœna; nor do the papers in the case on file in the clerk's office contain the subpœna or any return of its service. The record and entries in the docket show that on February 10, 1868, the appearance of F. A. Lane as solicitor for Mary R. Goodridge and the infant children of Ezra R. Goodridge was filed and entered, and that on the day following the same infants, by their mother as natural guardian, filed a petition in which was recited, among other things, the filing of the bill against them; their appearance; that they were under the age of fourteen years, and that they were advised that Richard E. Stillwell would be a proper person to be appointed their guardian to defend the suit, and praying his assignment for that purpose. The petition was verified by the mother and the solicitor of the infants, and on the same day, by an order duly filed and entered, Stillwell was appointed the guardian of such infants. He put in the usual guardian's answer.

A trial of the issues was had, resulting in an adjudication that the property had been purchased with partnership funds. The decree appointed a receiver, directed a conveyance of the property to him by the widow of Ezra R. Goodridge and the guardian *ad litem* of the infants. The decree was complied with in such respects, and such proceedings were thereafter had in pursuance thereof and of the further order of the court as resulted in a conveyance of the premises to J. Pierpont Morgan May 23, 1872.

The statement of facts which we have made, while very brief, is sufficient to call attention to the questions involved. The referee, in a very careful and learned opinion, discusses two propositions: *First*, whether the service of the subpœna was a jurisdictional fact; and, *second*, assuming it to be jurisdictional, whether the fact of service of the subpœna was presumptively established by the judgment record.

The second question he answers, and we think rightfully, in the affirmative, and his further conclusion that such presumption has not been overcome by anything appearing in the record or by any competent extrinsic proof seems to us well founded.

The judgment should be affirmed upon the opinion of the referee in so far as it discusses the second proposition to which we have referred.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.