(79 Misc. Rep. 109.)

### HERTZBERG v. ELVIDGE.

(Supreme Court, Special Term, Monroe County. January, 1913.)

1. JUDGMENT (§ 158*)—DEFAULT—VACATION.

   The moving papers for vacation of a judgment by default on the ground that the summons and complaint were never served on defendant, though the judgment roll contains an affidavit of personal service upon him, need not contain an affidavit of merits.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 311; Dec. Dig. § 158.*]

2. JUDGMENT (§ 162*)—DEFAULT—VACATION—EVIDENCE.

   On a motion to vacate a judgment by default on the ground that the summons and complaint were never served on defendant, though the judgment roll contains an affidavit of personal service thereof on him, evidence as to defendant's absence from his place of business, where the affidavit of service states that personal service was made, with evidence of time of such service, *held* to sufficiently rebut the presumption in favor of the affidavit of service and to authorize vacation of the judgment.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 319–322; Dec. Dig. § 162.*]

Action by Charles R. Hertzberg against Frank E. Elvidge. On motion by defendant to set aside a default judgment. Granted.

Charles H. Rowe, of Rochester, for plaintiff.
McInerney & Bechtold, of Rochester, for defendant.

SAWYER, J. Defendant moves to vacate and set aside a judgment entered by plaintiff against him in Monroe county clerk's office upon the 26th day of April, 1912. The judgment in question appears to have been rendered on default, and the judgment roll contains the ordinary affidavit that the summons and complaint were personally served upon defendant upon the 4th day of April, 1912.

The motion is based upon defendant's allegation that the statement of this affidavit is untrue, and that the summons and complaint, or either of them, was never, in fact, served upon him. The matter was originally sent to a referee to take the proofs of the parties in relation to the service of the summons and complaint, and report such proofs, together with his opinion to the court. Under that order a number of hearings were had before the referee, at which both parties were represented by counsel, and much testimony adduced. Subsequently, and before the referee's report was filed, the reference was terminated by plaintiff. The matter was thereupon again brought before the court; the parties stipulating that the evidence taken by such referee should be submitted to and considered by the court upon the decision of the motion, together with any additional affidavits which might be offered.

[1] As preliminary to a decision upon the merits of the controversy, plaintiff raises the question that the motion is in the nature of one to open a default, and urges that it cannot prevail, for the reason that the moving papers contain no affidavit of merits, nor anything to show the nature, good faith, and merit of defendant's defense to the cause

of action set forth in the complaint, and that no answer is to such complaint appended.

In an ordinary motion addressed to the discretion of the court this is required of one seeking leave to open a default and interpose a defense, and the objection would be fatal, for the motion papers do not contain any of the matters mentioned. That, however, is not the question here presented. Defendant does not come here attempting to excuse a default, or asking leave of the court to interpose an answer. He attacks the judgment in question squarely upon the ground that the court in which it purports to have been rendered was without jurisdiction, for the reason that he had never been brought into it by the prescribed prerequisite service of process. I do not discover any authority where the rule invoked has been carried to such length, unless the last paragraph in Jacobs v. Zeltner, 9 Misc. Rep. 455, 457, 30 N. Y. Supp. 238, is to be so construed, and reference to Jewell v. Heinzel, 6 Daly, 411, there cited as a precedent for the proposition laid down, shows the case to have been one of an ordinary default in appearance.

I take it a defendant is not, and in the nature of things cannot be, required to state what, if any, defense he has to an alleged cause of action for goods sold and delivered, nor whether he has any defense at all, until he has been regularly brought before and made subject to the jurisdiction of the court. Until then neither he nor the claim against him is under the court's direction. It would seem folly to require a defendant, before he can be relieved from the cloud of a fraudulent judgment, to submit an answer to a complaint with which he has never been served, or to render an excuse for omitting to appear in an action that had never been begun.

In cases of this character it seems to be well established that either a sheriff's certificate or an ordinary affidavit of service, while presumptive evidence of the truth of the facts therein set forth, may nevertheless be met and overcome, and, upon its falsity being established, all proceedings based thereon will be set aside by the court. Van Rensselaer v. Chadwick, 7 How. Prac. 297; Dutton v. Smith, 23 App. Div. 188, 50 N. Y. Supp. 784.

[2] The presumption in favor of the truth of such certificate or affidavit of service is, however, firmly fixed in our law and the burden of disproving its statements by evidence clear and convincing rests upon the attacking party. This is founded upon the very necessities of our judicial system, which seeks to render the solemn judgments of the court final and conclusive. Moulton v. Carty, 29 N. Y. Super. Ct. 470; Jacobs v. Zeltner, supra; Sloane v. Martin, 77 Hun, 249–289, 28 N. Y. Supp. 332; Julian v. Woolsey, 87 Hun, 326, 34 N. Y. Supp. 321, affirmed 147 N. Y. 722, 42 N. E. 723; Bradley v. Ryan (Sup.) 110 N. Y. Supp. 977.

It is impossible to reconcile the conflicting statements here presented. The witnesses upon the question at issue squarely and flatly contradict one another, and there seems no opportunity for the court to conform these contradictions with each other. The affidavit states that service was made upon defendant upon the 4th day of April, 1912, and in his testimony before the referee the affiant fixes the hour of service as

having been close to 5 or·half past·5 o'clock in the afternoon of that day, and the place of service as the saloon of defendant upon Main street in the city of·Rochester. This testimony is repeatedly confirmed by. him on cross-examination, and üpon his ·being recalled, several weeks after he was first examined, he again testifies:

"The exact ·time I cannot say ,to the minute, but between half past 4 and 5 or half past 5 and 6."

This accords with his testimony that when the summons was given him for service he told plaintiff's attorney that he could probably find defendant at his place of business between 5 and 6 which was the usual "busy hour." In his supplemental affidavit, verified November 29, 1912, he, speaking of the service, declares as the best impression of his mind that:

"It was between 5 and 6 o'clock in the afternoon of that day, although it may have been, possibly, some other period or time during such day."

In view of the precision and· insistence with which the witness had theretofore fixed the time, and ·of·the knowledge of defendant's testimony he had then acquired, this last suggestion I think of little weight or value. At the best it is only an admission that in fixing the hour of service he may have been in error, although he thinks not. .Aside from the fact that he received this summons for service some time during the day of April 4th, with directions to serve same upon defendant, and that he reported to plaintiff's attorney upon the morning of April 5th that service had been made, the evidence of service rests entirely upon this affiant.

In this statement the claim that he is corroborated by the admissions of defendant made to the witness Kearse is not forgotten or ignored. The substance of that witness' testimony is that upon one occasion he saw the deputy sheriff at defendant's place of business, and that immediately afterward defendant stated to him that a fellow had taken judgment against him, and that nobody had defended the action, that he had turned all the papers in the case over to his attorneys, and that through their forgetfulness or negligence they. had permitted judgment to be taken against him; that, in response to witness' statement that judgment could not have been had unless he had been served. with a summons, defendant answered:

"All that matter has been turned over to McInerney & Bechtold."

· It would seem unusual for a business man to enter into such a discussion with a casual customer, with whom he had only slight acquaintance; but the surprise and excitement incident to the information he had just received may perhaps furnish an explanation for that. It will be observed by a careful reading of the testimony that this witness nowhere states that defendant admitted the service upon him of the summons in the action; that all attempts to draw from him testimony of that particularity was evaded and met with the general assertion that defendant said his attorneys had charge of the case, that all the papers in the case had been turned over to them, that his attorneys had not looked after it, that one of his attorneys had turned· over the papers about the suit to the other, who had mislaid

them, that all of that stuff was down at his attorneys' office, and they had neglected to take care of it, and other similar expressions of blame of his attorneys.

The other testimony shows that a dispute concerning the claim upon which judgment was based had arisen between the parties, that considerable correspondence had passed between the parties and their attorneys in relation to it, and that some time prior to April defendant had placed the matter in charge of counsel, who had thereafter been engaged in looking after it for him. These facts, it appears to me, sufficiently account for the statements he is alleged to have made to Kearse, and must limit his alleged admissions to his understanding that they, having charge of the matter for him, had, through some neglect, permitted it to run to judgment.

It is needless to speculate upon what, if any, knowledge he may have had of the necessity under such circumstances for personal service to be made upon him. It is sufficient to say that where a reasonable explanation, based upon facts conceded to exist, can be had, his utterances should not be so extended or distorted as to involve a significance not clearly apparent. It may be said, in passing, that defendant denies this entire transaction, and, in view of his denial, the plaintiff's ability to produce such a witness, conceded to have none but the most casual acquaintance with defendant, and none whatever with plaintiff, would seem to demand explanation not here given. The conclusion I have reached as to the probative force of the evidence as corroboration of the statement of the affidavit of service makes it unnecessary, however, to discuss the question of credibility.

Defendant endeavors to overthrow the proof of service by evidence in the nature of an alibi. His contention is that upon the 4th day of April, 1912, he was at home during the entire forenoon in attendance upon his wife, who was then seriously ill; that about half past 12 on that day he went to his store, where he remained until half past 1 or a quarter to 2, when he went to a meeting of an association of which he was a member, and at which, as a chairman of one of its committees he was required to make a report; that he left the meeting at about 3 o'clock in the afternoon, returning directly to his home, where he remained with his wife during the balance of the day. If this story is to be accepted, it follows that he could not have been served with the summons at his place of business between half past 4 and 6 o'clock that afternoon.

In support of his testimony to that effect his wife testifies, that he was at home with her during all that day, except between 1 and 3 o'clock, when he left her to attend the liquor dealers' meeting, returning at about the latter hour and remaining the rest of the day and night. Her testimony is, of course, to be scrutinized in the light of the interest which a wife naturally may have in the success of her husband's enterprises, but is not necessarily to be rejected because of the fact that she is married to the man in whose behalf she testifies.

The physician, who was in attendance upon her, was called, and testified that he was at defendant's home some 20 or 25 minutes between 11 and 12 o'clock that forenoon, that the defendant was then present, and that, there being no nurse, he told defendant some one

140 N.Y.S.—43

must stay with her. The secretary of the association, which the defendant claims to have attended upon the afternoon in question, corroborates his statement that he was present at its meeting, getting there about 2 o'clock in the afternoon, but is unable to state how long he remained or the hour of his leaving.

One Coddington, who was then employed by defendant, testified that, upon the day in question, Mr. Elvidge came to his place of business at about half past 12, noon, and left there at about half past 1 to a quarter to 2, saying that he was going to a meeting of the association mentioned; that his hours of duty lasted until 6 o'clock in the evening; and that at no time prior to that hour did defendant again return to his place of business. The witness Conway, who was also employed by defendant, testified that upon the day in question he was on duty from 6 o'clock a. m. until half past 12, noon, and from 6 o'clock p. m. until the closing hour in the evening, and that at no time, while he was at defendant's place of business that day, was defendant there.

All these witnesses, except the doctor and Mr. Yaky, identify the day because of its significance in the Roman Catholic Church with which they were affiliated, and because of various conversations in relation thereto, not needful here to detail. While the physician and the two bartenders were at the time in the employ of defendant, that connection has since ceased, and their relations with him do not destroy or mar the evidential value of their testimony. They are in no wise attacked as to credibility, and their stories, as do also those of Mrs. Elvidge and Mr. Yuky, seem to be reasonable and natural, and to be told with sincerity and honest purpose. In my opinion, the defendant's statement that he was not at his place of business when the person who made the affidavit of service claims to have there made the service upon him is by the other evidence fully and completely corroborated, and that fact to be deemed proved.

This conclusion carries with it, necessarily, the conclusion that defendant has met and rebutted the presumption in favor of the affidavit of service under consideration, and established by a fair preponderance of the credible evidence that the service was not made as therein stated. As was said in Van Rensselaer v. Chadwick, supra, the affidavit of service must either be a fiction fraudulently set up by the affiant for the purpose of deceiving the plaintiff and wronging the defendant, or there has been some mistake on the part of the person making the affidavit.

It is possible that service was made upon some other person, mistaken for defendant, or was made upon some other day, and forgotten by defendant. Whatever may be the fact in that regard, the affidavit states the service to have been personally made upon defendant April 4, 1912, and by this statement plaintiff is bound, and upon it must either stand or fall. Burroughs v. Reiger, 12 How. Prac. 171.

Other evidence in the case, bearing either indirectly, or not at all, upon the one fact in issue, has been fully considered, but in no manner affects my determination as above indicated.

Motion granted, with costs.